STATE DIVISION OF HUMAN RIGHTS on the Complaint of CANDY CALLERY, Complainant, *v.* NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, Respondent. NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, Petitioner.

First Department, December 9, 1971.

*Howard Hertzberg* of counsel (*Henry Spitz*, attorney), for State Division of Human Rights.

*J. Lee Rankin, Corporation Counsel* (*Stanley Buchsbaum* and *Jesse J. Fine* with him on the brief), attorney for petitioner.

*Per Curiam.* Petitioner, the New York City Department of Parks and Recreation, brings this proceeding pursuant to section 298 of the Executive Law, to vacate and set aside an order

of the State Division of Human Rights made on March 27, 1971 as modified by the Human Rights Appeal Board by order dated May 21, 1971.

This proceeding was initiated upon complaint of Candy Callery, a female, who was denied employment as a lifeguard, because of her failure to meet the minimum height and weight requirements set by the petitioner. Miss Callery is 5 feet 6 inches and weighs 125 pounds, while the minimum requirement for the position of lifeguard requires one to be at least 5 feet 7 inches and at least 135 pounds in weight.

After a hearing, the State Division of Human Rights issued an order, which was modified by the Appeal Board. The following are the provisions of the order of the Division of Human Rights, with the matter in brackets representing those provisions which were deleted by the Appeal Board in its final order which is under review herein:

" ORDERED, that Respondent New York City Department of Parks and Recreation, their agents, representatives, employees, successors and assigns shall take the following affirmative action which will effectuate the purposes of the Human Rights Law:

" [1. Respondent shall for the next two swimming seasons after the effective date of this Order discontinue its height and weight requirements.]

" 2. Respondent [during said two seasons] shall test and train Complainant and any other candidate to ascertain whether or not they meet the requisite skill and efficiency for being a lifeguard, consistent with due concern for public safety.

" 3. If Complainant qualifies for and successfully completes a lifeguard training course, then Respondent shall offer her employment at a swimming facility under Respondent's jurisdiction for the first summer season after completion of the training course.

" 4. Respondent shall offer employment to successful applicants without regard to sex.

" [5. At the end of said two seasons, if Respondent shall have found it essential to establish minimum height and weight standards for the job of lifeguard, application for approval of such standards shall be made to the Division.] "

The above order was made only after it had been determined that the height and weight standards tended to exclude the vast majority of women from qualifying for the subject position. In point of fact, the statistics established that 90% of women in the age category of 17 through 34 do not meet the minimum height while 60% do not meet the minimum weight. In contrast, more than 80% of men in that age category meet the

minimum weight standard and 70% meet the minimum height standard. The effect clearly is to exclude virtually all women and the position of lifeguard, therefore, is open essentially to men.

The order of the Appeals Board also rested upon the finding that petitioner did not produce any substantial evidence "which would show whether the required height and weight measurements set by the [Petitioner] are essential to the proper performance of the duty of lifeguard at New York City beaches and pools." This finding was amply supported by the evidence. The testimony at the hearing demonstrated that the weight and height standards were adopted without any real reference to the job duties and requirements and without any testing procedures. In fact, the testimony showed that persons both shorter and lighter might be able to perform the job duties as well as those who met the physical standards. And it is to be noted that even upon meeting the height and weight standards the petitioner required that individuals show "that they have the strength." Further, it would appear that while several reasons were given for adoption of the particular height and weight standards, the real basis for those standards was just that it was felt that there had to be some line of demarcation. This reason is patently insufficient where the result is the exclusion of the majority of women from employment.

The order of the Appeal Board did not preclude petitioner from establishing any height and weight standards reasonably related to the job duties but in effect merely required petitioner to test and train candidates to ascertain whether they met the requisite skill and efficiency for the job. Indeed, the Appeal Board deleted the ordering provision of the Division of Human Rights which provided that "[Petitioner] shall for the next two swimming seasons * * * discontinue its height and weight requirements." In the decision of the Appeal Board it was stated that "to exclude height and weight requirements for two swimming seasons with respect to all applicants, in our opinion, is an arbitrary determination by the Division and should be deleted from the Order."

The order of the Appeal Board therefore recognized that while the standards then in effect were arbitrary and served no purpose other than to exclude the majority of women, height and weight requirements might have a relationship to the job duties. Such order has the salutary purpose of encouraging petitioner to develop procedures and set standards not arbitrarily but after proper testing and evaluation insuring there-

fore that the standards bear a proper and real relationship to the job functions.

The dissent does not really take issue with the findings by the Appeal Board, but apparently takes the position that since the standards set by petitioner were not made for the purpose of excluding females, it was improper for the Appeal Board to include any provision in its order other than that which would require petitioner to "offer employment to applicants without regard to sex." However, it is not necessary, in order to find a discriminatory practice, to conclude that the standards resulting in such discriminatory practice, were adopted with the intent to discriminate. It is enough if the statistics show that the standards imposed exclude virtually all women, and that those standards serve no job related purpose. In such case the standards imposed are "inherently discriminatory against women." (*New York State Division of Human Rights* v. *New York–Pennsylvania Professional Baseball League,* 36 A D 2d 364.) The result is a *de facto* discrimination.

In these circumstances, to issue an order which merely iterates the provisions of paragraph (a) of subdivision 1 of section 296 of the Executive Law which makes it an unlawful discriminatory practice to refuse employment to any individual because of the sex of that individual is an empty gesture. More than a repetition of the statutory language is needed under the circumstances of this case to prevent continuation of a practice which results in discrimination. The dissent, however, would allow continuation of the exclusion of the vast majority of women from being employed as lifeguards. This would amount to a holding that the position of lifeguard is within the "bona fide occupational qualification" exception to the law. (Executive Law, § 296, subd. 1, par. [d].) And such would be accomplished without any showing by petitioner that the position of lifeguard can only be performed by males. "Recent court decisions have required that this exception be affirmatively proved by the party claiming it. (*Weeks* v. *Southern Bell Tel. & Tel. Co.,* 408 F. 2d 228; *Bowe* v. *Colgate-Palmolive Co.,* 416 F. 2d 711; *Cheatwood* v. *South Cent. Bell Tel. & Tel. Co.,* 303 F. Supp. 754; *Richards* v. *Griffith Rubber Mills,* 300 F. Supp. 338.) *New York State Division of Human Rights* v. *New York-Penn. Baseball, supra,* at p. 367. As stated in *Weeks* v. *Southern Bell Tel. & Tel. Co.,* 408 F. 2d 228 at p. 235, "we hold that in order to rely on the bona fide occupational qualification exception an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or sub-

stantially all women would be unable to perform safely and efficiently the duties of the job involved.''

We conclude that the findings in the proceeding under review are amply supported in the record and that the provisions of the order of the Appeal Board are proper. Accordingly, the application should be denied, the petition dismissed, and the order of the Human Rights Appeal Board should be confirmed without costs and petitioner directed to comply therewith.

KUPFERMAN, J. (concurring in part and dissenting in part). Candy Callery, height 5 feet 6 inches, weight 125 pounds (the usual rotogravure dimensions are not here relevant) filed a complaint with the State Division of Human Rights alleging that the City of New York through its Department of Parks and Recreation, discriminated against her in employment as a lifeguard, because of her sex, in violation of the Human Rights Law (Executive Law, art. 15).

She was not accepted, because the city requires lifeguards to be at least 5 feet 7 inches in height and at least 135 pounds in weight.

Originally, Commissioner Mangum made a finding of non-discrimination and ordered the complaint dismissed. The Human Rights Appeal Board remanded for a further hearing and new findings of fact were made, including the obvious facts that the afore-mentioned minimum height and weight standards disqualified '' females at a substantially higher rate than male applicants '', '' that height and weight requirements are reasonably related to the duties of lifeguard at a swimming facility '', because they had to do with possible needed strength for safety, discipline over bathers, etc., but that it is possible for those of a smaller stature to do the job, which can be determined by testing and training.

The determination as modified by the Appeal Board (the matter within brackets has been eliminated by the Appeal Board from the Commissioner's determination) follows:

'' ORDERED, that Respondent New York City Department of Parks and Recreation, their agents, representatives, employees, successors and assigns shall take the following affirmative action which will effectuate the purposes of the Human Rights Law:

'' [1. Respondent shall for the next two swimming seasons after the effective date of this Order discontinue its height and weight requirements.]

'' 2. Respondent [during said two seasons] shall test and train Complainant and any other candidate to ascertain whether or not they meet the requisite skill and efficiency for being a lifeguard, consistent with due concern for public safety.

" 3. If Complainant qualifies for and successfully completes a lifeguard training course, then Respondent shall offer her employment at a swimming facility under Respondent's jurisdiction for the first summer season after completion of the training course.

" 4. Respondent shall offer employment to successful applicants without regard to sex.

" [5. At the end of said two seasons, if Respondent shall have found it essential to establish minimum height and weight standards for the job of lifeguard, application for approval of such standards shall be made to the Division.] "

Requirements of age, weight, height, experience, etc. are " at best an arbitrary standard to separate the men from the boys. At worst, it is a deprivation of a constitutional right to work while restricting the market " (*Matter of Tchernoff,* 36 A D 2d 527, 528 [1st Dept., 1970] [dissent]). Many standards may be considered capricious, e.g., one sustained by this court in *Matter of Jenkins* v. *Department of Social Servs.* (37 A D 2d 765) requiring a Master of Social Work degree for a raise for City Social Service employees where the employee involved had completed a satisfactory equivalent course leading to a different degree unacceptable by the language of the New York City Department of Welfare rules.

Although in many ways the lines of distinction between male and female fade, it cannot be gainsaid that the weight and height requirement has the effect of eliminating more women than men. See Statistical Abstract of the United States 1970, No. 120 " Weight Range of Men and Women by Age and Height: 1960–1962 ".

But was it the purpose of this requirement deliberately to exclude females? The question answers itself when one considers the factual situation with regard to female hire for lifeguard by the City of New York and exposes the analogous to a *post hoc ergo propter hoc* fallacy of the majority determination here.

No woman had been hired as a lifeguard, until one was hired *after this proceeding had commenced,* out of some 800 annual employees for this purpose. While their work included difficult ocean surf and heavy equipment, it also included pools and dealing with children. In typical bureaucratic fashion, the possibility of having some lifeguards for the less rigorous exposure was avoided. When the complainant first applied to take the lifeguard test, she was told " Sorry, girls aren't allowed to take it."

It is clear and amply sustained that women were discriminated against — period. It had nothing to do with height and weight.

Where one excludes all in a group, why bother to set standards which will only exclude a large number?

While the need for weight and height limitations has not been fully substantiated, and there may be a better way to make the selection, this is administrative shorthand. E.g., the New York City Civil Service Commisssion Regulations for Police Trainee state "Height — Minimum of 5 feet 7 inches in bare feet is required."

The majority imputes malevolence to, in this instance, a mindless determination based on a balance of convenience without much cogitation.

If another nail is to be used to firm the plaque dedicated to the end of the cult of sex discrimination, let it not be bogged down in the menstrual cycle.

I would modify to strike all portions of the order set forth above other than item 4. The only requirement should be that "Respondent shall offer employment to applicants without regard to sex."

Let those in the city administration who have responsibility for swimming make the determination (with cerebrum) as to what standards are really necessary for a lifeguard. Those standards have not yet run afoul of the Human Rights Law (Executive Law, art. 15, § 296). (See *Matter of New York Stock Exch.* v. *N. Y. S. Div. of Human Rights,* 37 A D 2d 941.)

MARKEWICH, J. P., MURPHY, McNALLY and TILZER, JJ., concur in *Per Curiam* opinion; KUPFERMAN, J., concurs in part and dissents in part in an opinion.

Application denied, order dated May 21, 1971 of the State Human Rights Appeal Board confirmed, and the petition dismissed, without costs and without disbursements, and the petitioner is directed to comply with said order.