[Civ. No. 32689. First Dist., Div. Three. Mar. 15, 1974.]

VERAGENE HARDY, Plaintiff and Appellant, v.
WILLIAM F. STUMPF et al., Defendants and Respondents.

## COUNSEL

Clifford C. Sweet, Suzanne Mounts, Thomas Fike and Carolyn E. Jones for Plaintiff and Appellant.

Edward A. Goggin, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**BROWN (H. C.), J.**—This is an appeal from a judgment denying a petition for a writ of mandate instituted by one Veragene Hardy, for herself, and all other women who would be interested in being police officers in the Oakland Police Department.

Appellant challenged the requirement of the Oakland Police Department that applicants for the position of patrolman had to be male, weigh 135 pounds and be 5 feet 7 inches tall. She also challenged as a denial of equal protection the requirement that applicants for the position of policewoman have more education and better eyesight than applicants for the position of patrolman.

The trial judge found that the size requirement for the position of patrolman was valid. He declined to rule on the question of whether the requirement that applicants be male was invalid on the ground that appellant was not large enough to meet the size requirements. Since this was a class suit brought on behalf of all women who wished to become patrolmen, the trial court should have decided the validity of the sex requirement. The issue has now become moot, however, since the City Council of Oakland, by ordinance and board resolution, has changed the requirements that limited the job of patrolman to males.[1] There is now but one category, that of "Police Officer," to which all qualified men and women may apply. One of the qualifications is a height of at least 5 feet 7 inches and a weight of 135 pounds.

The sole issue to which we address ourselves, therefore, is the question of whether the height and weight requirement impermissibly discriminates

---

[1]On February 1, 1974, counsel for the City of Oakland and for appellant stipulated that the record on this appeal could be augmented by the inclusion of certified copies of Resolution No. 41933 of the Oakland Civil Service Board and Ordinance No. 8850 C.M.S.

against women as a class. Appellant has chosen a correct procedural means to present this issue for mandamus "is an appropriate remedy for the enforcement of a civil right." (*Wrather-Alvarez etc., Inc.* v. *Hewicker,* 147 Cal.App.2d 509, 511 [305 P.2d 236].)

■ It is well settled under present law that a person, including a female, does have the right not to be discriminated against in employment.[2] (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 11, 21; Cal. Const., art. XX, § 18; Lab. Code, §§ 1410-1432, amended in 1970 to include *sex* as a prohibited basis for discrimination in employment; *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 16 A.L.R.3d 351]; tit. VII, Federal Civil Rights Act of 1964 (42 U.S.C.A. § 2000e-2(a).)
■ In *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1, 16-18, the California Supreme Court discussed the proper standards for reviewing an employment classification based on sex when considering an equal protection argument. The court concluded that the application of the strict scrutiny standard of review applied to such a discrimination both because a fundamental right is involved, that of employment, and also because any classification based upon sex should be treated as suspect. (See also *Frontiero* v. *Richardson,* 411 U.S. 677, 682 [36 L.Ed.2d 583, 589, 93 S.Ct. 1764].) This standard of review was described as follows: " 'In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. [Citations.]

" 'On the other hand, in cases involving "suspect classifications" or touching on "fundamental interests," the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations.] Under the strict standard applied in such cases, the state bears

---

[2]Contrast the language of the court in *Bradwell* v. *The State* (1872) 83 U.S. (16 Wall.) 130, 141-142 [21 L.Ed. 442, 446]: The early concepts of the functions of women in society were described as follows: "the civil law, as well as nature herself, has always recognized a wide difference in the respective spheres and destinies of man and woman. Man is, or should be, women's protector and defender. The natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of civil life. The constitution of the family organization, which is founded in the divine ordinance, as well as in the nature of things, indicates the domestic sphere as that which belongs to the domain and functions of womanhood. . . .

". . . The paramount destiny and mission of woman are to fulfil the noble and benign offices of wife and mother. This is the law of the Creator. . . . [because]

". . . in view of the peculiar characteristics, destiny, and mission of woman, it is within the province of the legislature to ordain what offices, positions, and callings shall be filled and discharged by men, and shall receive the benefit of those energies . . . which are presumed to predominate in the sterner sex."

the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' (*Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].)" (*Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1, 16-17.)

■ A classification may be considered discriminatory against one sex or another even though it does not do so directly. Thus a seemingly neutral job requirement which has the effect of disqualifying a disproportionate number of one sex is discriminatory and must be viewed under the strict scrutiny test. (*Smith* v. *City of East Cleveland,* 363 F.Supp. 1131, 1136-1138.) ■ When scrutinizing suspect classifications, the courts may not accept stereotyped generalizations to justify dissimilar treatment but must review the evidence upon which these generalizations are based. (*Frontiero* v. *Richardson, supra,* 411 U.S. 677, 682-688 [36 L.Ed.2d 583, 589-592].) In reviewing the requirement that Cleveland policemen be 5 feet 8 inches in height, a federal court recently stated: "Applying the *Frontiero* standard of review to this case, the Court rejects as an adequate justification the unsupported generalization that large male policemen will perform better than short or female policemen. The Court holds that to sustain requirements which exclude nearly all women from employment as police officers, the 5 feet 8 inch and 150 pound minimums must be demonstrably related to job performance." (*Smith* v. *City of East Cleveland, supra,* at p. 1139.)

The court in *Smith* was unable to find any rational support from the evidence before it for the height and weight requirements for Cleveland police officers and concluded the requirements were based solely on the stereotype of the large male police officer. (363 F.Supp. at p. 1144.) The court further noted that it had been unable to locate any other authority which had found a rational relationship between the size requirements for police officers and the job they performed.

"It is significant that the Court has been unable to find any agency or authority which has reviewed the relationship between the height and weight requirement and police work on the basis of facts and which has arrived at a contrary conclusion. The Law Enforcement Assistance Administration refuses to permit departments receiving its funds to retain height requirements unless they first show through supportive factual data such as professionally validated studies that the requirement is an 'operational necessity' for designated job categories. 38 Fed.Reg. 4553, G. 5 (March 8, 1973). The Administration's Guidelines provide in part: The use of minimum height requirements, which disqualifies disproportionately women

and persons of certain national origins and races . . . will be considered violative to this Department's regulations prohibiting employment discrimination. *Id.* G. 4. The Iowa Civil Rights Commission after a finding that the height and weight requirements for the Des Moines Police Department had a disparate effect against women and had no rational basis, ordered the Police Department to cease using it 'until such time as they are properly able to validate in a professional manner such requirements for job-relatedness.' Nancy L. Moore v. City of Des Moines Police Department, CP No. 881, Iowa Civil Rights Commission (July 11, 1973). The Pennsylvania Attorney General ordered a 5 feet 6 inch requirement for state police suspended until it could be demonstrated as related to job performance because it excluded women and some minority groups. [CCH] EPD ¶ 5177 (1973)." (*Smith* v. *City of East Cleveland, supra,* 363 F.Supp. 1131, 1144.)

Appellant has cited to this court two other cases in which it was found that the employer had not demonstrated a rational relationship between size requirements and job requirements of positions similar to that of a policeman. In *State Div. of Hum. Rts.* v. *New York City Dept. of P. & R.* (1971) 38 App.Div.2d 25 [326 N.Y.S.2d 640], the size requirements (5 feet 7 inches, 135 pounds) were found not to be sufficiently related to the performance of the duties of a lifeguard. In *In re Shirley Long,* the United States Civil Service Commission Board of Appeals and Review (Nov. 13, 1972), found that the size requirements (5 feet 8 inches with proportionate weight) were not sufficiently related to the performance of the duties of a park police officer with the National Park Service.

Respondents distinguish these cases from the case at hand on the ground that the finder-of-fact of those cases had found that there was not sufficient evidence of job relatedness. Clearly, the same argument would be made regarding the *Smith* case, a case decided too recently to appear in the briefs, for that was decided by a federal district court. Respondents argue that this court is confined to the substantial evidence rule on review and that the record contains sufficient evidence to sustain the findings of the trial court.

Respondents cite *Castro* v. *Beecher* (D.Mass. 1971) 334 F.Supp. 930, where the court pointed out by way of dictum that "[i]t is probable that while height is not *determinative* of fitness to be a policeman, any more than it is of fitness to be an athlete or a general, it is *significantly related* to fitness to be a policeman, as it is not significantly related to being a judge or a scientist. A policeman of average height or taller may not be more effective than a short one in persuading children, drunks, rioters, and obstreperous persons to obey promptly, he may not be physically stronger, and

he may not even look more impressive in a police parade. But obviously the Boston City Council thought so, and its conclusion finds support in the laws, regulations, and customs governing many police forces." (334 F.Supp. at p. 940.) This is clearly an enunciation of an improper standard and was not repeated by the reviewing court in *Castro* v. *Beecher,* 459 F.2d 725, 734. There the court refused to look at the height requirement for it was not shown to discriminate against the class of plaintiffs, Spanish-surnamed persons. The court did, however, note that it was unclear as to even the survival of a minimum height for the new Boston Commissioner of Police had disavowed mechanical adherence to any height minimum and the civil service commission had evidenced a similar attitude. Significantly, the court indicated that to justify a discriminatory height limitation, the employer would have to show that such was "substantially related to job performance." (459 F.2d at p. 732.)

■ We agree that the height and weight requirement for the position of patrolman must be reviewed as a discriminatory classification. It is not necessary to conclude that these standards were adopted with intent to discriminate; it is enough if statistics show that the standards imposed in fact exclude virtually all women. (*State Div. of Hum. Rts.* v. *New York City Dept. of P. & R.* (1971) *supra,* 38 App.Div.2d 25 [326 N.Y.S.2d 640]; *Smith* v. *City of East Cleveland, supra,* 363 F.Supp. 1131, 1136-1137.) Statistics show that over 80 percent of all American women are excluded by a size limitation of 5 feet 7 inches and 135 pounds. (Statistical Abstract of the U. S. Bureau of Census (Dept. of Commerce, 1966).)

The trial court found that the size requirement was reasonable and necessary to the normal operation of the duties of a police patrolman. It is this finding which is unsupported by the type of evidence which must justify discriminatory treatment. Respondents sought to justify the size requirements solely on the ground that physical strength is necessary to the duties of a patrolman;[3] specifically in the restraint of hostile and struggling persons during an arrest or flight, in lifting and carrying persons, and in pulling persons from wrecked automobiles. It was not disputed that physical strength is related to the performance of these duties. It is only disputed that a person must be 5 feet 7 inches tall and weigh 135 pounds to perform these

---

[3]The defendants in *Smith* sought to justify their size requirements on several other grounds than strength, i.e., physical fitness, physical agility, ability to view crowds, ability to drive a car, arm reach, ability to absorb blows and ability to impress others with physical prowess and other "unmeasurable" advantages of height. The court's discussion and conclusion as to these grounds are interesting and persuasive (363 F.Supp. at pp. 1140-1144), although, of course, not determinative in an evaluation of the evidence before another court.

tasks. Applicants for patrolman are tested before acceptance for strength, agility, stamina, endurance and flexibility. No explanation was offered as to why a person below 5 feet 7 inches who passed the physical tests would not have the strength to perform the duties of a patrolman. James M. Newman, director of personnel, testified that, in his opinion, substantially all persons under the size requirements could not perform efficiently. He had done no studies to confirm his opinion that the smaller the officer, the less adequately he performed. He could not recall any specific case to substantiate his opinion. No tests had been done to determine how well persons under 5 feet 7 inches could perform. He had never observed women in the performance of duties similar to those required by patrolmen and was unfamiliar with any tests of women. His opinion that substantially all persons under 5 feet 7 inches would be unable to perform the duties of a patrolman being unsupported by any facts is no more than the stereotyped generalization evidence which has been held insufficient to justify dissimilar treatment of the class. (See *Frontiero* v. *Richardson, supra,* 411 U.S. 677, 682-688.)

Respondents also questioned two police sergeants of the Oakland Police Department as to their opinion of the ability of persons under 5 feet 7 inches and 135 pounds to perform effectively. Both men were of the opinion that this size was too small for performance of the duties of a patrolman. These men, also, however, did not testify that policemen on the force who were only the minimum size did not perform effectively and they had no experience with the performance of people under this size. There was again no factual foundation supporting their opinion. This type of evidence must be evaluated as mere conclusions.

The record contains no other evidence relating physical size to the performance of the duties of a patrolman. The testimony presented by the City was in large part devoted to the premise that women would not be suitable for patrol work regardless of their size. As stated earlier in this opinion, it is unnecessary for us to consider this premise not only because the trial court did not make a finding but also because the City of Oakland has since made a determination to the contrary.

We have concluded that the height and weight requirement for the position of Oakland police officer discriminates against women as a class and that the evidence does not support the trial court's finding that the size requirements were reasonably related to that position.

We do not hold that reasonable physical agility and strength require-

ments may not be established in the City of Oakland but only that such requirements must be demonstrably related to job performance.

The judgment denying a petition for writ of mandate is reversed.

**DRAPER, P. J.**—We concur in the judgment, but do so solely on the basis that the evidence in this record is insufficient to support the findings and judgment.

There is no question that the regulations in effect at the time of trial were rankly discriminatory against women. They set higher standards of education and visual acuity for women than for men. As has been stipulated, however, these differences have been eliminated, and the sole question before us is whether the height and weight limitation of 5 feet 7 inches and 135 pounds, although equally applicable to men and women, in fact discriminates against females. It is quite true that statistics compiled in 1966 show that 80 percent of women fail to meet this height limit, while a like percentage of men do meet it. But these statistics cover the age group 18-70. It seems that members of the current generation are larger than their parents. The age bracket here relevant is 21-32, the age limits for admission to the police force. It may be that a far lesser disparity would be shown in this group, and the decision in this case should not bar evidence upon that subject in another action under other regulations.

Moreover, elimination of the height-weight limits must, under the same principle of equal treatment which requires it, eliminate the like requirement as to men. A factor upon which there is neither evidence nor discussion here is that of public confidence. The police arm functions not only to protect the public, but to instill in that public confidence that it is being protected—an increasingly difficult task in these days of rising crime rates. Some nondiscriminatory minimum size requirement is entirely in order, and to the extent that the opinion in this case may be deemed to strike down all such limitation as a matter of law, we cannot agree.

Caldecott, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 8, 1974. Burke, J., and Clark, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.