**Veragene HARDY, etc., et al.,**
**Plaintiffs,**

**v.**

**Jerris LEONARD, etc., et al.,**
**Defendants.**

**No. C–73 732 ACW.**

United States District Court,
N. D. California.

April 26, 1974.

Clifford C. Sweet, Legal Aid Society of Alameda County, Oakland, Cal., Meade & Duane, Berkeley, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty. by Brian B. Denton, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

WOLLENBERG, District Judge.

Plaintiffs in this class action are Veragene Hardy, a woman who was denied employment with the Oakland Police Department (hereinafter "OPD"), and the National Organization of Women (hereinafter "NOW"), a national non-profit organization which seeks enforcement of laws relating to equal employment opportunity for women. These plaintiffs seek to represent all applicants for employment with the OPD who might be, or might have been, denied equal access to employment. Defendants are various administrators of the Law Enforcement Assistance Administration (hereinafter "LEAA") and other persons whose duty is to ensure compliance with equal employment opportunity requirements on the part of entities receiving financial support from LEAA. Plaintiffs ask the Court to order defendants to determine promptly whether the OPD is complying with federal equal opportunity requirements and, further, to order defendants to suspend LEAA's financial support of OPD if OPD is not so complying. This motion to dismiss is based on five separate grounds:

1) failure to state a claim upon which relief may be granted,
2) lack of standing,
3) failure to exhaust administrative remedies,
4) sovereign immunity,
5) mootness

### Failure to State a Claim Upon Which Relief May Be Granted and Standing

Plaintiffs want LEAA to fulfill its duty to enforce Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits employment discrimination in any program or activity receiving federal financial assistance. Defendants contend only government agencies charged with such compliance responsibility under Title VI have standing to seek judicial termination of federal assistance under Title VI. Green Street Ass'n v. Daley, 373 F.2d 1 (7th Cir. 1967); Taylor v. Cohen, 405 F.2d 277 (4th Cir. 1968). This raises the questions whether anyone except agencies may bring such an action, and, if so, whether these named plaintiffs have the requisite standing.[1]

Title VI has only a few provisions, and the scheme is relatively simple. Section 601 prohibits programs and activities receiving federal assistance from discriminating in employment. Section 602 directs the department or agency which extended the financial assistance to enforce the prohibition on discrimination by terminating the federal assistance of a program or activity which is discriminating if efforts to secure voluntary compliance are unsuccessful.

---

1. Defendants characterize this action incorrectly. It does not ask the Court to terminate the OPD's federal assistance, but seeks to compel LEAA to perform its statutory obligations under Title VI. Whether plaintiffs may seek termination of OPD's federal assistance is not an issue before the Court.

Section 603 authorizes judicial review of any department or agency action taken pursuant to § 602. The nature and extent of the judicial review Congress provided in § 603 of Title VI will determine whether this Court may consider the issue plaintiffs raise.

Section 603 of Title VI, 42 U.S.C. § 2000d–2, provides in part:

Any department or agency action taken pursuant to section 2000d–1 [§ 602 of Title VI] shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds.

In Gardner v. Alabama Dept. of Pensions & Security, 385 F.2d 804 (5th Cir. 1967), Alabama challenged the Secretary of Health, Education & Welfare's decision to terminate federal assistance to Alabama welfare programs due to violations of Title VI. The threshold question raised by *Gardner* was whether § 603 vested jurisdiction in the district court to review the Secretary's decision to terminate funds pursuant to § 602. The Fifth Circuit concluded that the district court was without jurisdiction to review the Secretary's decision to terminate funds pursuant to § 602. The Fifth Circuit concluded that the district court was without jurisdiction to review the Secretary's decision because "similar action taken by such department or agency on other grounds" was reviewable under 42 U.S.C. § 1316(a)(3), which designated the United States Court of Appeals as the forum in which such decisions would receive judicial review. 385 F.2d at 810.

Defendants do not allege that the present case is similar to *Gardner*. They do not claim that judicial review of LEAA's implementation of Title VI is available through any means other than that plaintiffs are pursuing.[2] To the

2. Title I of the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3701 et seq., establishes LEAA and the framework within which it functions. Sections 509 and 510 of the Act, 42 U.S.C. §§ 3757 and 3758, provide for terminating federal assistance by LEAA under the following circumstances: substantial failure by an applicant for or grantee of funds to comply with
(a) the provisions of this chapter;
(b) regulations promulgated by the Administration under this chapter; or
(c) a plan or application submitted in accordance with the provisions of this chapter;
42 U.S.C. § 3757.
Section 501 of the Crime Control Act of 1973, 42 U.S.C. § 3751, amending the Crime Control and Safe Streets Act of 1968, permits LEAA to promulgate regulations to implement the purposes of the Act. Regulations issued pursuant to this authority are set out at 28 CFR §§ 42.201–42.308 (1973). Also applicable to grants administered by LEAA are regulations issued by the Justice Department pursuant to Title VI of the Civil Rights Act of 1964 and found at 28 CFR §§ 42.102–42.112 (1973). These regulations set out in detail the precise equal employment opportunity requirements that are to be followed by recipients of or applicants for financial assistance from LEAA. They state in comparable detail the administrative procedures to be followed by LEAA in enforcing the equal employment opportunity requirements.

Neither the Omnibus Crime Control and Safe Streets Act of 1968, as amended, nor regulations issued pursuant thereto, provides for administrative or judicial review of agency action taken pursuant to the Act except at the behest of the agency or an aggrieved recipient of, or applicant for, financial assistance from LEAA. Title VI, on the other hand, provides for review in a federal district court of "any department or agency action". 42 U.S.C. § 2000d–2; 28 CFR § 42.-111. Such review is to be under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., (hereinafter "APA") if no other review is provided by law. 42 U.S.C. § 2000d–2. "Agency Action" is defined by the Administrative Procedure Act to include

the whole or a part of an agency rule . . . sanction, relief, or the equivalent *or denial thereof, or failure to act.*

5 U.S.C. § 551(13) (emphasis supplied). Furthermore, the APA does not restrict standing to seek judicial review to applicants and grantees, but extends the right to any person suffering legal wrong because of agency action, or adversely affected or ag-

contrary. By proposing that only LEAA may seek judicial termination of its federal assistance to programs, LEAA asks this Court to foreclose all judicial review of its alleged inaction under the Congressional mandate of Title VI. This would be contrary to the plain expression of Congress in Section 603, that agency action pursuant to Title VI be reviewable either under an already existing scheme of review or under that proposed in Section 603.

*Gardner* does not reject district court review under the circumstances of this case. Neither party in *Gardner* argued there should be no judicial review of the Secretary's decision. The dispute was whether that review was to be in the district court or the court of appeals. Here the question is whether there is to be any judicial review of LEAA's action.

Defendants assert that judicial review of agency action under Title VI is available only at the behest of the agency. In Green Street Ass'n v. Daley, *supra,* however, the Seventh Circuit expressly approved judicial review of agency action under Title VI once federal officials have taken measures to secure voluntary compliance under Section 602. *Green Street Ass'n, supra,* at 8–9.

Defendants rely, finally, on Taylor v. Cohen, 405 F.2d 277 (4th Cir. 1968), to preclude the type of judicial review plaintiffs seek. In that case the Richland County School District of Columbia, South Carolina, had been implementing a freedom of choice plan of school desegregation for four years, and the impact of this plan on the District's racial balance was minimal. The Department of Health, Education and Welfare, through informal discussions with local officials, succeeded in getting the school board to adopt a stronger desegregation plan. Adverse public reaction was greater than expected, and the school board responded by modifying some of the provisions of

the new plan. H.E.W. had already instituted administrative proceedings to terminate the School District's funds, and action on requests for new funds by the District was deferred. The Fourth Circuit reversed the District Court's injunction against H.E.W.'s administrative action to terminate the District's funds. Two reasons were given by the Fourth Circuit:

1) Citing Gardner v. Alabama Dept. of Pensions & Security, *supra,* as authority, the court held that by its own terms Section 603 of Title VI precluded any action under the Administrative Procedure Act because judicial review was already provided by other statutes —specifically, 20 U.S.C. §§ 241K, 585 and 869. 405 F.2d at 279–280.

2) Any judicial review was premature in this case because H.E.W. had not yet completed the administrative process which might or might not result in termination of funds, and the courts could review only final agency action. 405 F. 2d at 279–280.

The court thus held not that all judicial review is precluded, but that such review must not precede final agency action.

Having decided that review was premature and that the District Court had improperly issued its injunction, the court in Taylor v. Cohen proceeded gratuitously to consider whether parents of school children would have standing to challenge a decision by H.E.W. to terminate its financial assistance to the school district. The court found that although parents are, of course, vitally interested in the financing and school assignments of their children, they have no standing to seek judicial review of decisions committed entirely to the discretion of the School Board. 405 F.2d at 282. Since the suit against H.E.W. was indirectly an attack on the School Board's exercise

---

grieved by agency action within the meaning of a relevant statute.
5 U.S.C. § 702.
It is clear, therefore, that no judicial review of the agency action in question is

available to plaintiffs except under the APA, and that Section 603 of Title VI expressly makes judicial review under the APA available to plaintiffs under these circumstances.

of its discretionary power, the court concluded that the parents lacked standing to maintain the action. 405 F.2d at 282. The court expressly conceded, though, that the

> parents do have standing to enjoin a board's unconstitutional action, whether it originates in the school board itself or is the product of pressure brought against it by a government agency. Griffin v. School Bd. of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

405 F.2d at 282.

■ In the present case plaintiffs are not indirectly attacking an exercise of discretionary power by the Oakland Police Department. Plaintiffs are seeking review of a final determination by LEAA that it will not terminate funds of the OPD. The cases relied upon by defendants plus *Gardner* all concede that ultimately there is judicial review of an agency's decision to terminate funds pursuant to Title VI. Such review must await final agency action however. Neither these cases nor any other authority cited by defendants or otherwise known to this Court suggests why judicial review of a final agency decision *not* to terminate funds is not equally proper and necessary if the integrity of the scheme erected by Congress under Title VI is to be protected.

■ Plaintiff NOW alleges it is a national organization whose purpose is to secure enforcement of laws prohibiting employment discrimination against women. It further alleges it filed an Administrative complaint with LEAA on September 13, 1972, protesting alleged employment discrimination by the OPD. NOW has only an ideological interest in the outcome of this action and, accordingly, lacks the personal stake necessary to establish standing under Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

■ Plaintiff Veragene Hardy alleges she was denied employment by the OPD in May 1971 and filed an Administrative Complaint with LEAA on September 13, 1972, protesting allegedly discriminatory employment practices of the OPD. Because she satisfies standing requirements as discussed in Sierra Club v. Morton, *supra*, and authorities cited therein, and for the additional reasons enumerated above, Ms. Hardy has standing to maintain this action.

*Exhaustion of Administrative Remedies*

■ The APA requires, with some exceptions, [*See* Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968)], that persons who otherwise have standing to bring an action under the APA must first exhaust available administrative remedies. 5 U.S.C. § 704; Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). The extent of exhaustion required in a particular case depends upon a consideration of the purposes of the exhaustion doctrine "and of the particular administrative scheme involved." McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

Defendants' argument that plaintiffs have not exhausted their administrative remedies may be summarized as follows:

1) Plaintiffs admit they have been advised by LEAA that LEAA is attempting to secure voluntary compliance by the OPD.

2) The Omnibus Crime Control Act of 1970, *supra*, "does not place any time limitation on administrative proceedings to effectuate compliance." Defendants' Brief at 8.

3) Therefore, "plaintiffs have failed to exhaust their administrative remedies since LEAA is required by statute to first seek voluntary compliance." Defendants' Brief at 8.

Section 602 of Title VI, 42 U.S.C. § 2000d–1, requires an agency to attempt to secure voluntary compliance with the other provisions of Title VI before federal assistance is terminated pursuant to

Section 602.[3] Regulations issued pursuant to Title VI and governing LEAA procedures require LEAA to investigate complaints of employment discrimination by recipients of financial assistance administered by LEAA. 28 CFR § 42.107. If investigation made pursuant to the complaint produces evidence of such discrimination, LEAA is directed to follow procedures set out at 28 CFR §§ 42.108–42.111.

■ Plaintiffs allege in their complaint that these administrative remedies were exhausted in that LEAA failed to investigate plaintiff Hardy's complaint promptly as required by relevant regulations. See Plaintiffs' Complaint at paragraph VII; 28 CFR § 42.107(c).[4] Plaintiffs have therefore alleged some agency action, or inaction, pursuant to section 602 of Title VI and regulations issued pursuant thereto, and such agency action is specifically made reviewable by 28 CFR § 42.111, by section 603 of Title VI and by the Administrative Procedure Act, 5 U.S.C. § 704. Plaintiffs' allegation is that LEAA has not complied with its obligations under the law to investigate the OPD's compliance with Title VI and with administrative guidelines for equal opportunity employment issued pursuant to the Omnibus Crime Control and Safe Streets Act of 1968 (hereinafter "the Omnibus Act") and set out at 28 CFR §§ 42.301–308. Defendants' response that LEAA is still engaged in efforts to secure voluntary compliance may be a defense to the merits of plaintiffs' claim, but it does not justify dismissal for failure to exhaust administrative remedies.

■ Defendants argue that there is no time limit within which they must conclude their efforts to obtain voluntary compliance. Regulations issued pursuant to the Omnibus Act, however, do not anticipate that informal negotiations to produce voluntary compliance will go on indefinitely. Section 42.206(a) of the regulations prefer judicial proceedings over administrative proceedings under circumstances in which the two are considered equally likely to result in compliance. The clear intent of Title VI and of regulations issued pursuant to Title VI and to the Omnibus Act is to require

The full and equal participation of women and minority individuals in employment opportunities in the criminal justice system [as] a necessary component to the Safe Streets Act's program to reduce crime and delinquency in the United States.

28 CFR § 42.301(a). Efforts to obtain voluntary compliance must not proceed so long that they become a device to avoid compliance. Such efforts made with no foreseeable end are inconsistent with 28 CFR § 42.206(a), which requires, in effect, that administrative efforts to secure compliance must take no longer than would judicial proceedings to reach the same result.

■ Defendants further argue that action by this Court is inappropriate because plaintiff Hardy has pending in the

---

3. Section 602 of Title VI, 42 U.S.C. § 2000d–1, provides in relevant part:

[N]o such action [to terminate financial assistance for noncompliance] shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means.

Procedures to be followed by LEAA to secure voluntary compliance with Title VI are set out at 28 CFR §§ 42.107–111 and 42.201–42.206.

4. Title 28 CFR § 42.107(c) provides:

(c) *Investigations.* The responsible Department official or his designee will make a prompt investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this subject. The investigation should include, whenever appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with this subpart occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with this subpart.

California Court of Appeal an action against the Alameda County Civil Service alleging sex discrimination by the OPD. Hardy v. Stumpf, 37 Cal.App.3d 958, 112 Cal.Rptr. 739. The issue in Hardy v. Stumpf is whether the OPD is practicing discrimination in employment on the basis of sex. The issue in the present case is whether LEAA is complying with obligations imposed on it by Title VI and the Omnibus Act. These cases raise separate causes of action and may be adjudicated separately.

*Sovereign Immunity*

Defendants claim the doctrine of sovereign immunity is a bar to each ground for jurisdiction alleged by plaintiffs. Plaintiffs rely on the following statutes to establish federal subject matter jurisdiction: a) 28 U.S.C. § 1331 (the general Federal question jurisdictional statute); b) 28 U.S.C. § 1361 (mandamus); and 3) Administrative Procedure Act.

Under what circumstances the doctrine of sovereign immunity is a bar to actions against officers of the United States was considered carefully and at length by the Ninth Circuit in State of Washington v. Udall, 417 F.2d 1310 (9th Cir. 1969). The State of Washington and the Secretary of the Interior disagreed over whether a particular federal statute required the Interior Department to supply the state with water from the Columbia Basin Project. The Court of Appeals rejected the Secretary's defense that the United States was an indispensable party and that sovereign immunity barred a suit of this type against the United States. This conclusion was based on one of the two major exceptions to the doctrine of sovereign immunity enunciated by the Supreme Court in Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 689–691, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and affirmed in Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), and again in Dugan v. Rank, 372 U.S. 609, 621–622, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

The ultra vires exception to the doctrine of sovereign immunity permits suit against a federal officer when the plaintiff alleges the officer's powers are controlled by statute and that the officer has acted in a manner not authorized by the relevant statute. State of Washington v. Udall, *supra*, at 1314. In State of Washington v. Udall, *supra*, plaintiff argued that the Secretary of the Interior was arbitrarily and capriciously withholding water from Washington despite a statute expressly authorizing delivery of that water. The Court of Appeals permitted such an action notwithstanding the doctrine of sovereign immunity.

In the present case Title VI plus regulations issued pursuant to Title VI and to the Omnibus Act all direct LEAA to terminate financial assistance to recipients who discriminate on the basis of sex. Plaintiffs claim officials of LEAA have violated their statutory obligations under Title VI and have committed an abuse of discretion by failing to investigate and otherwise act pursuant to Title VI and the Omnibus Act. These allegations bring this action within the ultra vires exception to the doctrine of sovereign immunity. Furthermore, Section 603 of Title VI may be interpreted as an express authorization of suit against the United States and, thus, a waiver by Congress of the doctrine of sovereign immunity.

Defendants make the related claim that this Court is precluded from exercising jurisdiction over this controversy because the decision plaintiffs ask the Court to review is committed to agency discretion by law and, hence, not subject to judicial review. 5 U.S.C. § 701(a)(2). Discretion may be defined as "a power to make a choice within a class of actions." Jaffe, Judicial Control of Administrative Action 359 (1965). While LEAA is vested both by statute and regulation with a certain amount of discretion in determining whether withholding of federal financial assistance is warranted, the language of the relevant statutes and regulations un-

equivocally requires that the determination be made and that LEAA act pursuant to its determination.

 Plaintiffs allege in this action that officials of LEAA have refused to make the required investigations and determinations pursuant to 28 CFR §§ 42.107(c) and 42.206(a). Although this Court is expressly precluded from reviewing a particular decision of an agency when that decision was among several alternatives from which the agency was empowered to choose, 5 U.S.C. § 701(a)(2), Section 706 of the Administrative Procedure Act permits this Court to determine whether the agency has failed to make any decision when it is required to make one or whether it has otherwise abused the discretion it is authorized to exercise.[5] Professor Jaffe expressed this notion succinctly: "Presumptively, an exercise of discretion is reviewable for legal error, procedural defect, or 'abuse.'" Jaffe, Judicial Review of Administrative Action 363 (1965) (emphasis deleted).

In United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), an admittedly deportable alien sought judicial review of the Board of Immigration Appeals' decision denying suspension of his deportation. Everyone involved conceded that the section of the Immigration Act of 1917 which empowered the Board to suspend a deportation also left that decision entirely within the Board's discretion. Section 19(c) of the Act, 8 U.S.C. § 155(c) (1946 ed. Supp. V). Petitioner's precise objection to the decision was not the result itself, but the manner in which it was reached. The decision, he alleged, was determined before his case was reviewed by the Board. The Supreme Court remanded the case and directed the district court to determine whether petitioner's charges should be sustained. The Court added the following observations, relevant here:

█f the word "discretion" means anything in a statutory or administrative grant of power, it means that the recipient *must* exercise his authority according to his own understanding and conscience.

347 U.S. at 266–267 (emphasis supplied).

It is important to emphasize that we are not here reversing the *manner* in which discretion was exercised. If such were the case we would be discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief. Rather, we object to the Board's alleged *failure to exercise,* its own discretion, contrary to existing valid regulations.

347 U.S. at 268 (emphasis in original).

This action is properly before the Court to the extent that plaintiffs seek review of whether LEAA has failed to make any determination concerning the OPD's compliance with equal employment opportunity requirements, or whether LEAA has in some way abused its discretion in making such a determination.

*Mootness*

 Unless there is a genuine case or controversy the federal courts are without jurisdiction to act. U.S. Const. Art. III, § 2; Securities and Exchange Commission v. Medical Committee for Human Rights, 404 U.S. 403, 407, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). Defendants claim the present

5. Section 706 of the Administrative Procedure Act provides that

The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

case lacks such a case or controversy because LEAA has already performed the investigation this Court is being asked to order, and because the OPD has already complied with the recommendations LEAA made pursuant to its investigation. Furthermore, defendants claim the single issue not settled during negotiations between LEAA and the OPD, whether height and weight requirements for employment unlawfully discriminate against women, is being litigated in the California state courts. Hardy v. Stumpf, 37 Cal.App.3d 958, 112 Cal.Rptr. 739.

In *Medical Committee for Human Rights, supra,* a group of Dow Chemical Company shareholders challenged the S. E.C.'s decision that Dow had not violated the Securities and Exchange Act of 1934 when Dow refused to include a proposal of the shareholders in the company's proxy statement. While the S.E.C.'s appeal was before the Supreme Court, Dow .voluntarily complied with the shareholders' request and included their proposal in the company's proxy statement. The Court held that the facts of that case made it unlikely that Dow would repeat the conduct complained of, that no justiciable controversy remains and that the case was therefore moot. 404 U.S. at 406–407.

Here the government argues not that the OPD is complying with the guidelines LEAA is being asked to enforce (although the government does not deny the OPD is complying with the requirements of Title VI), but that LEAA has performed its duties under Title VI, the Omnibus Crime Control and Sage Streets Act of 1968, and regulations promulgated under the authority of those Acts.

As evidence of LEAA's compliance, the government offers the affidavit of Herbert C. Rice, one of the defendants in this action, who is Director of the Office of Civil Rights Compliance of LEAA. If accepted at face value, this affidavit makes a sufficient showing that plaintiff has received the relief she requested. Plaintiff's response is that the class she represents is also entitled to relief and that LEAA cannot moot the claims of that class by satisfying the claim of the single named plaintiff. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Cypress v. Newport News General Hospital, 375 F.2d 648 (4th Cir. 1967); Buckner v. County School Board of Greene County, 332 F.2d 452 (4th Cir. 1964).

In *Jenkins, supra,* plaintiff maintained an action on behalf of himself and other Black employees challenging his employer's promotion policies as discriminatory. The Court of Appeals for the Fifth Circuit held that the action did not become moot when, before the litigation ended, the named plaintiff was promoted to the position he had sought. This result was based on the court's view of the role of the named plaintiff as private attorney general and the purpose of Title VII of the Civil Rights Act of 1964. The action was brought to obtain class relief through the device of privately initiated class actions. Jenkins v. United Gas Corp., *supra,* at 31–32. Satisfaction of one plaintiff's individual claim did not moot the claims of the members of the class.

In *Cypress, supra,* plaintiff, a black doctor, sought to represent other black doctors in an action to obtain staff privileges in a community hospital. While the case was on appeal, the named plaintiff was granted the staff privileges he sought through the courts. The hospital then moved to dismiss the appeal as moot, and the court denied the motion on the ground that mootness could not be used by the hospital to deny rights to the members of the class. 375 F.2d at 657.

Buckner v. County School Board of Greene County, *supra,* is inapposite. In *Buckner* the Fourth Circuit held that transferring a few black students to previously all-white schools before the termination of a school desegregation suit was not compliance with the constitutional restriction prohibiting racial discrimination in the administration of the schools. The school board's action in

that case appeared to be more an effort to evade compliance than to provide it.

In all the cases just discussed, the employer or school district attempted to satisfy the claim of a single plaintiff merely as a device for denying relief to the entire class. The relief Hardy seeks, however, is not divisible from that sought for the class. If LEAA is performing at all its obligations under Title VI and the Omnibus Crime Control and Safe Streets Act of 1968, then it is necessarily doing so for all members of the class. If Hardy's claim becomes moot, then all claims are moot.

Defendants' evidence is convincing that LEAA has now complied with its responsibility to monitor and work with the OPD to assure compliance with relevant statutes regarding employment discrimination. It appears to the satisfaction of the Court that LEAA has engaged in compliance discussions with the OPD, that it has recommended changes in employment policies for the OPD, and that it has seen to it that the OPD has complied with the recommendations.

While the height and weight requirements for employment with the OPD remain in controversy, LEAA is properly awaiting the decision on that question which should be forthcoming from the California Court of Appeal. See Affidavit of Herbert C. Rice at 5, attached to defendants' motion to dismiss filed September 13, 1973.

It is proper, therefore, to dismiss this action on the ground of mootness.[6]

*Order*

For the reasons stated above, it is ordered that defendants' motion to dismiss this action be granted and that the action be, and hereby is, dismissed.

---

6. After this Opinion was prepared, but before it was filed, the California Court of Appeal reached a decision in Hardy v. Stumpf, 37 Cal.App.3d 958, 112 Cal.Rptr. 739 (1st Dist. 1974). The court reversed the denial of a writ of mandate, apparently on the ground that the evidence was insufficient to support the trial court's findings and judgment. This decision by the California Court of Appeal does not affect this Court's disposition of the present case on the ground of mootness. It appears that plaintiffs have now received the relief they sought regarding the only issues which remained in dispute between the parties.