[Civ. No. 44591. Second Dist., Div. Five. June 20, 1975.]

VINCE MONROE TOWNSEND, JR., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Vince Monroe Townsend, Jr., in pro. per., for Plaintiff and Appellant.

John H. Larson, County Counsel, and Charles J. Moore, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**KAUS, P. J.**—This case involves the problem of mandatory retirement imposed upon a public employee. The employee is a deputy public defender; the employer is the County of Los Angeles, which in January 1969 adopted a pension plan that requires county employees to retire at age 65.

Plaintiff Vince Monroe Townsend, Jr., appeals from a summary judgment in favor of respondent Los Angeles County and related defendants.[1]

---

[1]The demurrer of the State of California was sustained without leave to amend and the action dismissed. Although the notice of appeal does not refer to the judgment of

## FACTS

Plaintiff was employed by Los Angeles County as a deputy public defender starting in February 1965. He was a civil service employee.[2] He claims that when he was hired, retirement at age 70 was permissible but not required.[3] Plaintiff "enjoys excellent physical and mental health and strength," and is able to perform and carry out all of his duties of employment as a deputy public defender "competitively". He would like to continue to be a public defender "until at least" May 1, 1976, when he will reach 70 years of age, "or at some future time thereafter; . . . ." Starting in December 1972, he received several notices that he would be required to retire on January 1, 1974. In September 1973, he informed the county that he wanted to remain as a full time active and "competitively performing" deputy public defender, notwithstanding his having attained the age of 65 years. Nevertheless, he was forced to retire in January 1974.

The basis for plaintiff's mandatory retirement is section 31671.01 of the Government Code. That section provides for mandatory retirement at age 65 for employees of any county which has adopted an increased and accelerated pension program as set forth in Government Code section 31676.11.[4] The mandatory retirement provisions of that program take effect five years after the county has adopted the new pension plan. On December 31, 1968, the County of Los Angeles, by resolution of its

dismissal in favor of the state, plaintiff's brief in this court includes a prayer for an order "reinstating the State of California as a proper party defendant in this action." We interpret this as a slip of the pen. No appeal being before us, there is none to dismiss.

[2]The county denied plaintiff's allegation that he is a "permanent and tenured employee." However, under the Los Angeles County Charter, section 33, his job was a civil service job and there appears to be no real dispute about that.

[3]The county also denied plaintiff's allegations concerning the former provisions governing retirement. We may take judicial notice that under the general provisions governing county employees' retirement, the mandatory retirement age was and is age 70. (Gov. Code, § 31671.) Section 31672, on which plaintiff relies, simply sets forth the circumstances under which a county employee may retire—that is, when he has reached the age of 70 years, or has completed 10 years of service and has reached the age of 55, or has completed 30 years of service regardless of age.

[4]The county employees' retirement plans are set forth in Government Code, section 31670 et seq. The basic retirement age, as noted, is age 70 (§ 31671). The table for computing benefits for age 70 retirement is set forth in section 31676.1. Either to permit or encourage early retirement, the Legislature has authorized accelerated and increased pension plans. As applied to this case, under the general plan (mandatory retirement at age 70), a male employee who retires at age 65 or older would receive a pension in which his years of service are multiplied by 1.4525. (§ 31676.1.) Under the county's new plan, this factor is 1.5600. (§ 31676.11.) With other calculations, the factor under section 31676.1 is 2.421; under section 31676.11 it is 2.600.

board of supervisors, approved and adopted the pension schedule set forth in section 31676.11. The new mandatory retirement age thus took effect in January 1974, at which time plaintiff was 67 years of age. He receives a pension of $466 a month; under the former plan, he apparently would have received about $30 a month less.

## DISCUSSION

Plaintiff contends that Government Code section 31671.01 is unconstitutional in that it deprives him of his right to earn an "economic livelihood." He contends that any mandatory retirement age is unconstitutional and that the county's 65-year mandatory retirement plan is a denial of equal protection, since not all governmental employees or officers are subject to that plan. Alternatively, he contends that section 31671.01 is unconstitutional as applied to him, since he has a vested right in the retirement age in force when he was employed by the county.[5]

*Mandatory Retirement Age*

Essential to plaintiff's overall contention that mandatory retirement ages are unconstitutional, whether on due process or equal protection grounds, is his erroneous belief that he has a "fundamental right" to be a Los Angeles County Deputy Public Defender. There is no such right.

We do not question that there is a "fundamental right" to pursue a lawful occupation. (E.g., *Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566, 579 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) However, plaintiff's fundamental right to practice law (e.g., *Raffaelli* v. *Committee of Bar Examiners,* 7 Cal.3d 288, 293-294 [101 Cal.Rptr. 896, 496 P.2d 1264, 53 A.L.R.3d 1149]) does not encompass the right to work for a particular employer, whether that employer be public or private.

Rather, plaintiff's status as a civil service employee is comparable to that of a tenured teacher. In *Taylor* v. *Board of Education,* 31 Cal.App.2d 734 [89 P.2d 148], the plaintiff, a tenured teacher, contended that section 5.505 of the School Code—now Education Code, section 13325—enacted after she achieved tenured status and which terminated her permanent tenure at the age of 65, violated her constitutional rights. (31 Cal.App.2d at p. 737.) The court disagreed and pointed out that tenure in California

---

[5]Plaintiff also contends that summary judgment was improperly granted, because there are factual issues concerning his ability to perform as a public defender. He is mistaken: his competence is not in issue.

is statutory and not contractual and that the obligation to a tenured teacher continues until the Legislature sees fit to change the law. (*Id.,* at pp. 743-744.)

Notions of constitutional rights have not remained unchanged since 1939 when *Taylor* was decided. Nevertheless, cases old and new hold that a tenured teacher has no vested right to a particular salary. The only requirement is that the change in salary schedules is not arbitrary, discriminatory or unreasonable. (E.g., *Kacsur* v. *Board of Trustees,* 18 Cal.2d 586, 591-592 [116 P.2d 593]; *Gilbaugh* v. *Bautzer,* 3 Cal.App.3d 793, 796 [83 Cal.Rptr. 806]; *Brown* v. *Hanford Elementary Sch. Bd.,* 263 Cal.App.2d 170, 174-175 [69 Cal.Rptr. 154]; *San Diego Federation of Teachers* v. *Board of Education,* 216 Cal.App.2d 758, 762 [31 Cal.Rptr. 146]; cf. *California State Employees' Assn.* v. *Flournoy,* 32 Cal.App.3d 219, 226 [108 Cal.Rptr. 251].)

Conceptually, there should be no difference between a public agency's right to reduce the salary of a tenured employee and a public agency's right to require an employee to retire at a given age, thus forcing him to accept a pension that, in some cases, and, as plaintiff alleges in this case, effects a substantial reduction in income.

■ We find nothing arbitrary, discriminatory or unreasonable in establishing maximum retirement ages. Plaintiff's assertions of arbitrariness assume that the sole issue in determining the validity of mandatory retirement ages is the job effectiveness and protection of current jobholders. Rather, however, mandatory retirement increases the opportunity for all qualified persons to share in public employment and permits governmental units to plan for orderly attrition through lower retirement ages, or orderly growth through higher retirement ages.

The purposes of a mandatory retirement age in a public employment system were well stated in *Armstrong* v. *Howell* (D.Neb. 1974) 371 F.Supp. 48, in which case, as here, the county adopted a mandatory 65-year-old retirement age after the plaintiff had been employed by the county. The court, in declining to strike down the system as irrational and arbitrary, ruled: "Not all discrimination between classes of persons is violative of the law, the test being whether any distinctions which are drawn are rationally related to the purposes for drawing or making the distinctions. In the instant case, this Court is of the opinion that the mandatory retirement provisions in question achieve a permissible and logical end, and further, that the means chosen are reasonable and

rational. The stated purpose of the Act was to guarantee to all citizens a fair and equal opportunity for employment in the County offices governed by the Act and to establish conditions of employment and to promote economy and efficiency in such offices." (371 F.Supp. at p. 53.)

Moreover, constitutional issues aside, a mandatory retirement age of 65 years is consistent with federal and state employment legislation. Thus, under federal law, 29 United States Code, section 623, prohibits an employer from discriminating against a prospective or present employee because of that person's age, but section 631 limits the prohibition to persons "who are at least forty years of age but less than sixty-five years of age." The federal legislation is complemented by California law. Labor Code, section 1420.1 provides that it is an unlawful employment practice for an employer to fire or refuse to hire "any individual between the ages of 40 and 64 solely on the ground of age, . . ."

Finally, federal courts and sister jurisdictions have, over a period of years, held in a variety of contexts that an age restriction, consistent with law, is not unreasonable. (E.g., *Armstrong* v. *Howell, supra,* 371 F.Supp. 48, 53; *Retail Clerks U., Local 770* v. *Retail Clerks Int. Ass'n.* (C.D.Cal. 1973) 359 F.Supp. 1285, 1287-1288; *Weiss* v. *Walsh* (S.D.N.Y. 1971) 324 F.Supp. 75, 77, affd. 461 F.2d 846, cert. den., 409 U.S. 1129 [35 L.Ed.2d 262, 93 S.Ct. 939]; *Gossman* v. *State Employees Retirement System* (1964) 177 Neb. 326 [129 N.W.2d 97, 102-103]; *Campbell* v. *Aldrich* (1938) 159 Ore. 208 [79 P.2d 257, 261]; *McIlvaine* v. *Pennsylvania State Police* (1972) 6 Pa.Cmwlth. 505 [296 A.2d 630, 633-634], affd. (1973) 454 Pa. 129 [309 A.2d 801, 803], app. dism., 415 U.S. 986 [39 L.Ed.2d 884, 94 S.Ct. 1583]; *Browning* v. *City of Seattle* (1957) 50 Wn.2d 813 [314 P.2d 648, 650-651].)[6]

■ Plaintiff's further contention that the effect of a mandatory 65-year-old retirement age is to create an "irrebuttable presumption" of unfitness is, simply, a restatement of his position that he had a fundamental right to continued public employment. (See *Armstrong* v. *Howell, supra,* 371 F.Supp. 48, 55.)

---

[6]The United States Supreme Court noted probable jurisdiction on May 19, 1975 in *Massachusetts Board of Retirement* v. *Murgia,* 421 U.S. 974 [44 L.Ed.2d 466, 95 S.Ct. 1973], after the district court had held unconstitutional a provision mandating retirement of police officers at age 50. (*Murgia* v. *Commonwealth of Massachusetts Bd. of Retire.* (D. Mass. 1974) 376 F. Supp. 753.) Previously, the Supreme Court had affirmed the judgment in *Weisbrod* v. *Lynn,* 420 U.S. 940 [43 L.Ed.2d 420, 95 S.Ct. 1319] (see 383 F.Supp. 933), and dismissed the appeal for want of substantial federal questions in *McIlvaine* v. *Pennsylvania, supra,* 415 U.S. 986, in which mandatory retirement procedures were unsuccessfully challenged.

He mistakenly relies on *Cleveland Board of Education* v. *LaFleur* (1974) 414 U.S. 632 [39 L.Ed.2d 52, 94 S.Ct. 791], for the proposition that an "irrebuttable presumption of physical incompetency" is constitutionally impermissible. *LaFleur* established no such rule. That case involved mandatory maternity leave; the court pointed out that compulsory maternity leave affects "one of the basic civil rights of man" (*id.,* at p. 640 [39 L.Ed.2d at p. 60]), and that the rule, which created "an irrebuttable presumption of physical incompetency," (*id.,* at p. 644 [39 L.Ed.2d at p. 62]) unnecessarily infringed upon a woman's fundamental right to bear children. (*Id.,* at pp. 648, 650 [39 L.Ed.2d at pp. 64-66].)

More to the point, as we have shown, mandatory retirement provisions serve legitimate goals that have nothing to do with fitness.

*Equal Protection*

■ Plaintiff next contends that the mandatory retirement age of 65 is irrational and denies him the equal protection of laws because: only those eligible counties which agree to the increased pension plan have a 65-year age mandatory retirement age (*supra,* fn. 4; see Gov. Code, §§ 31676.1, 31676.11), state employees are not required to retire until they reach the age of 70—an incorrect claim,[7] judges are not required to retire at any age,[8] and teachers, at worst, lose their right to tenure if they do not retire at age 65 (Ed. Code, § 13325).

Plaintiff's contention is, again, pegged to a misapprehension about the purposes of mandatory retirement. Conceding that persons performing comparable work are not less qualified in one county at age 65 than such persons are in another county at age 70, mandatory retirement ages also reflect the interests of prospective employees and the needs of governmental units.

*Vested Rights*

■ The issue whether the retirement ages, if any, in effect when a public employee is hired, constitute a "vested right" has been explicitly rejected by several federal and sister jurisdictions. (*Norman* v. *United States* (1968) 392 F.2d 255, 259 [183 Ct.Cl. 41], cert. den., 393 U.S. 1018

---

[7] Effective 1971, the mandatory retirement age for most state employees was gradually reduced to age 67. (Gov. Code, § 20981.) Moreover, mandatory retirement ages for various state employees vary. (Gov. Code, §§ 20980-20983.2.)

[8] Substantial economic incentives are provided if a judge retires no later than the age of 70. (Compare Gov. Code, § 75032 with § 75076; § 75034.1 with § 75077.)

[21 L.Ed.2d 562, 89 S.Ct. 622] ["White Charger Act" forcing early retirement of military officers]; *Armstrong* v. *Howell, supra,* 371 F.Supp. 48, 53; *Campbell* v. *Aldrich, supra,* 79 P.2d 257, 259, 261; *Browning* v. *City of Seattle, supra,* 314 P.2d 648, 650; but see: *Bruck* v. *State* (1950) 228 Ind. 189 [91 N.E.2d 349, 352-353].)

Moreover, the county was entitled to make reasonable modifications in the conditions of plaintiff's employment. Although generally retirement benefits are considered vested rights (e.g., *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 45 [112 Cal.Rptr. 805, 520 P.2d 29]; *Pearson* v. *County of Los Angeles,* 49 Cal.2d 523, 532 [319 P.2d 624]), reasonable modifications accompanied by comparable new advantages to the particular employee are permissible. (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 453 [326 P.2d 484]; *Amundsen* v. *Public Employees' Retirement System,* 30 Cal.App.3d 856, 859 [106 Cal.Rptr. 759].) It is immaterial that the changes are not to the liking of a particular employee and that he prefers the former quid pro quo. In *Amundsen, supra,* the court approved the trial judge's statement that the mere fact that the employee " 'individually, does not desire to share in [the] advantages does not affect the validity of the amendments insofar as they may apply to such employees.' " (*Id.,* at p. 859.) Doubtless, many county employees, unlike plaintiff, have no complaints that they will receive a higher pension by retiring at age 65 than they would have received at age 70; and that the new system permits such employees an additional five years during which they may, besides receiving a pension, work or not work as they choose.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.