[S.F. No. 23482. Apr. 13, 1978.]

VERAGENE HARDY, Plaintiff and Appellant, v.
WILLIAM F. STUMPF et al., Defendants and Respondents.

4

[redacted]

**COUNSEL**

Clifford Sweet, Carolyn Jones, Richard Duane and Ballachey, Meade, Duane & Lyman for Plaintiff and Appellant.

David A. Self, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**CLARK, J.**—Plaintiff appeals from judgment denying petition for writ of mandate. Challenging City of Oakland's requirement that police officer applicants be able to scale a six-foot wall, she claims the disproportionate rejection of females constitutes sex discrimination denying equal protection and violating the 1964 Civil Rights Act. The trial court upheld the requirement as reasonably related to the duties of Oakland police officers. We affirm the judgment.

Plaintiff similarly challenged in 1971 the reasonableness of height and weight requirements for becoming Oakland police officers. (*Hardy* v. *Stumpf* (1974) 37 Cal.App.3d 958 [112 Cal.Rptr. 739].) Those requirements were struck down in that case because the evidence failed to

demonstrate they were reasonably related to actual job performance. In attempting to comply with standards suggested by the Court of Appeal, Oakland devised a new physical performance test. A job analysis survey of Oakland police officers determined their duties include an ability to run, lift or drag objects and scale walls. The new test requires the performance of these and other tasks, emphasizing agility rather than strength.

The new test requires an applicant to run 300 feet (the length of a city block), scale a 6-foot wall (the height limitation for fences in Oakland), walk across a balance beam, run another 300 feet, register 75 pounds on a grip dynamometer device, and drag a 140-pound dummy for 50 feet, raising it to a 2-foot platform, all within 2½ minutes. An applicant must scale the wall in two attempts and walk the balance beam in two tries. Anyone failing the test may retake it after four months. Of the women who have taken the physical agility test, only 15 percent passed in comparison to the 85 percent passage rate for men.

Before instituting the test as a selection device, an experimental study was made wherein the test was given to 41 male police officers and 20 female volunteers. The women varied in age, size, and physical condition. Of this group, 50 percent of the women failed to scale the wall on both attempts, while only 7.5 percent of the men failed. Ten percent of each sex failed the balance beam. The women averaged 87 pounds on the grip test, the men 140 pounds. No one failed the dummy drag and lift. The average time to complete all events for females was 2 minutes 28 seconds, for men 1 minute 48 seconds.

Plaintiff, a 27-year-old, 5-foot 4-inch, 118-pound female, applied for a position with the Oakland Police Department. She passed the written test but failed the physical agility test when she was unable to scale the six-foot wall in both attempts.[1]

We conclude the challenged test does not discriminate on the basis of gender and is rationally related to the requisite qualifications for an Oakland police officer. Accordingly, the test does not constitute a denial of equal protection or a violation of the 1964 Civil Rights Act.

---

[1]After failing the test, plaintiff requested permission to make several practice attempts. On her first "off the record" effort, she successfully scaled the wall. As with all applicants who failed, she could reapply and retake the test in four months. Instead, she chose the present litigation.

## EQUAL PROTECTION

■ Traditionally, the constitutional right to equal protection requires that state action bear some rational relationship to a legitimate governmental purpose. (E.g., *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].) However, when state action creates a suspect classification or abridges some fundamental right, such action becomes subject to strict judicial scrutiny and the state must show a compelling state interest in justification. (*Id.*)

■ Plaintiff asserts the strict scrutiny standard is applicable in the circumstances of this case, claiming the physical agility test discriminates against women and abridges their fundamental right to pursue employment.

Classifications predicated on gender are deemed suspect in California. (Cal. Const., art. I, § 8; *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1, 20.) However, the physical agility test does not constitute a classification based on gender. The six-foot wall climb, as with all other events, is required of both men and women. The only classification occurs between those persons—male and female—who can climb the wall and those—again of both sexes—who cannot. Plaintiff is thus not prevented from becoming a police officer on the basis of her gender, but rather because she is unable to demonstrate necessary physical ability.

While the test is neutral on its face, plaintiff contends its disproportionate disqualification of females invokes strict scrutiny. Plaintiff relies upon the minority opinion in *Hardy* v. *Stumpf, supra,* 37 Cal.App.3d 958, which states "a seemingly neutral job requirement which has the effect of disqualifying a disproportionate number of one sex is discriminatory and must be viewed under the strict scrutiny test." (*Id.,* at p. 962.) The statement is overbroad and in error. The United States Supreme Court, in dealing with an equal protection challenge to a job requirement which disqualified a disproportionate number of black applicants, held a personnel test which excluded, although not designed to do so, disproportionately large numbers of black applicants did not offend equal protection. (*Washington* v. *Davis* (1976) 426 U.S. 229 [48 L.Ed.2d 597, 96 S.Ct. 2040].) "Standing alone, [disproportionate impact] does not trigger the rule [citation] that racial classifications are to be subjected to the strictest scrutiny . . . ." (*Id.,* at p. 242 [48 L.Ed.2d at p. 609].)

Nor does the classification in the present case impinge upon a fundamental right. In *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], we held the right to pursue a lawful occupation is fundamental only if the employment sought is a common occupation within the community. An individual does not possess a fundamental right to pursue an occupation wherein "technical complexity and intimate relationship to the public interest and welfare counsel . . . deference to legislative judgment." (*Id.*, at p. 18.)[2]

The occupation before us is hardly a common one. Law enforcement involves not only a close relationship to the "public interest and welfare" but also requires physical skills and technical knowledge including detailed knowledge of the law. Police officers must possess the physical ability to maintain public order, to protect persons and property, to avert wrongdoing, and to apprehend criminals. Application of the criteria enunciated in *D'Amico* compels the conclusion no one possesses a fundamental right to become a police officer.

Further, a constitutional right to pursue an occupation presupposes an ability to perform the job. Neither the federal nor state Constitution suggests a person be employed absent the ability to satisfy job requirements. No prohibited classification occurs when a statute categorizes those who can and cannot meet job requirements.

 In the absence of both a suspect classification and a fundamental right, we apply the traditional equal protection standard. The record clearly establishes a reasonable relationship between the physical performance test—particularly the six-foot wall climb—and job performance. The job analysis survey, upon which the physical performance test is based, indicated Oakland police officers in routine performance of their duties must occasionally scale walls or fences. With a city fence height limitation of six feet, it is reasonable to require police officer applicants to scale a six-foot wall as a prerequisite to becoming an Oakland police officer.

---

[2]Although language in *Sail'er Inn, supra,* 5 Cal.3d 1, 17 suggests an individual possesses a fundamental right to pursue any lawful occupation, the overbreadth of this language was noted and appropriately limited in *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1.

CIVIL RIGHTS ACT

Plaintiff further contends the physical agility test violates title VII of the Civil Rights Act of 1964. (42 U.S.C. § 2000e-2(a); Lab. Code, §§ 1411, 1412; Gov. Code, §§ 50084, 50085.) ■ The objective of title VII is to achieve equality of employment opportunity by removing arbitrary and unnecessary barriers which discriminate on the basis of gender. (*Griggs* v. *Duke Power Co.* (1971) 401 U.S. 424, 429-431 [28 L.Ed.2d 158, 164, 91 S.Ct. 849].) An employer may rely on ability tests to determine competency of applicants providing the tests are not designed or used to discriminate (42 U.S.C. § 2000e-2(h)), and are demonstrably related to job performance. (*Griggs* v. *Duke Power Co., supra,* 401 U.S. 424, 436 [28 L.Ed.2d 158, 167].)

The Equal Employment Opportunity Commission (EEOC), having enforcement responsibility, has provided guidelines to determine employment test validity. (29 C.F.R. pt. 1607.) ■ Guideline review compels the conclusion the physical agility test is properly job related in the instant case. Although the EEOC prefers validity be based on a criterion-related study as described by the American Psychological Association, evidence of content validity alone is acceptable. (*Id.,* § 1607.5(a).) A test will satisfy content validation if sufficient information exists from a job analysis that the knowledge, skill or behavior tested is a suitable sample of the job. The EEOC warns the knowledge, skill or behavior must not include those which can be acquired in a brief orientation to the job. (*Id.,* § 1607.5(a).) It is unlikely applicants, incapable of learning to scale a six-foot wall in preparing for the test, will easily acquire the skill once in uniform.

The job analysis survey demonstrates the test is significantly correlated to important elements of the job. (*Id.,* § 1607.4(c).) Again, the six-foot wall climb as a testing criterion reflects a critical duty of Oakland police officers. (*Id.,* § 1607.5(b)(3).) The test has practical significance for it consists of physical tasks officers are required to perform. (*Id.,* § 1607.5(c)(2).) The test avoids subjective bias because it is graded on a pass/fail basis. (*Id.,* § 1607.5(b)(4).) Applicants need only demonstrate they meet the normal expectation of police officer proficiency. (*Id.,* § 1607.6.) Finally and significantly, any applicant failing the test is permitted to take it again. (*Id.,* § 1607.12.)

It is contended herein the City of Oakland has not complied with an EEOC guideline requiring that current police officers pass the same

physical agility test required of police officer applicants.[3] While the somewhat ambiguous language of the second sentence of the guideline might be read as supporting such contention, the language following the second sentence makes abundantly clear the guideline's intent to restore opportunities lost through prior discriminations. As applied in the circumstances of this case if females "have been" denied equal opportunities "because of prior" discriminations, they must now be afforded the "same opportunities as had existed for [males] during the period of discrimination." In conclusion the guideline states: "Thus, no new test . . . can be imposed upon [females] who, *but for prior discrimination, would have been granted the opportunity to qualify under less stringent standards previously in force.*" (Italics added.)

■ What the guideline tells us is that a female applicant, who because of some prior discrimination was unable to qualify under previous less stringent standards, cannot now be required to take and pass a more stringent test. The guideline thus *does not* purport to require an employer to continue to test its current employees in the same manner as it tests applicants for new positions, as has been urged.[4] Moreover, there is no showing on the record that earlier testing standards, emphasizing strength rather than agility, demanded less of an applicant for a position as an Oakland police officer. Accordingly, the guideline has no application in the prevailing circumstances.

[3]The particular guideline provides as follows: "The principle of disparate or unequal treatment must be distinguished from the concepts of test validation. A test or other employee selection standard—even though validated against job performance in accordance with the guidelines in this part—cannot be imposed upon any individual or class protected by title VII where other employees, applicants or members have not been subjected to that standard. Disparate treatment, for example, occurs where members of a minority or sex group have been denied the same employment, promotion, transfer or membership opportunities as have been made available to other employees or applicants. Those employees or applicants who have been denied equal treatment, because of prior discriminatory practices or policies, must at least be afforded the same opportunities as had existed for other employees or applicants during the period of discrimination. Thus, no new test or other employee selection standard can be imposed upon a class of individuals protected by title VII who, but for prior discrimination, would have been granted the opportunity to qualify under less stringent selection standards previously in force." (29 C.F.R. § 1607.11.)

[4]The position urged by the dissent—that changed, even improved, testing standards must be imposed on persons deemed to be currently qualified as well as persons seeking such status (see dis. opn., *post,* pp. 13-14) —might lead to almost ridiculous results. Thus an employer, unless he tested all employees on each occasion when new testing standards were adopted, might be bound to continue to use outdated testing standards. Members of the bar might be required to take and pass the bar examination with the adoption of each new testing device, as in the case of a change from a full essay examination to a part essay and a part multiple choice examination, or upon the inclusion of new subject matter materials, for example, a professional responsibility examination.

■ Despite identical purposes, the standard of judicial review is more probing under title VII than under equal protection concepts. (See *Washington* v. *Davis, supra,* 426 U.S. 229, 246-247 [48 L.Ed.2d 597, 611-612].) Under title VII a prima facie case of sex discrimination is established if a neutral employment testing device has a disproportionate effect on one gender. (*Albermarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 425 [45 L.Ed.2d 280, 301, 95 S.Ct. 2362].) Once discrimination is shown by the complaining party, the employer has the burden of proving the test is demonstrably related to the job. (*Id.,* at p. 425 [45 L.Ed.2d at p. 301].) If the employer meets its burden, the complainant is then afforded an opportunity to show other tests would satisfy the same employment requirements without similar disproportionate results. (*Id.,* at p. 425.)

■ Evidence adduced at trial established a prima facie case of sex discrimination in that six times as many men as women passed the physical agility test. However, as already noted, the Oakland Police Department successfully demonstrated the physical agility test is related to job performance. Plaintiff failed to show an alternative test could effectively determine applicant's ability to perform the duties of an Oakland police officer while reducing the disproportionate impact upon women. Surely, it is difficult to imagine a more accurate way of testing ability to scale a six-foot wall than to scale one.

The judgment is affirmed.

Mosk, J., Richardson, J., Wright, J.,* and Sullivan, J.,† concurred.

**TOBRINER, Acting C. J.**—I dissent.

As the United States Supreme Court has pointed out, "Nothing in the [Civil Rights] Act precludes the use of testing or measuring procedures; obviously they are useful." (*Griggs* v. *Duke Power Co.* (1971) 401 U.S. 424, 436 [28 L.Ed.2d 158, 167, 91 S.Ct. 849].) On its face, defendants' six-foot wall test appears to be a reasonable testing procedure useful in

---

*Retired Chief Justice of California sitting under assignment by the Acting Chairperson of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

measuring ability to respond to an emergency situation. And, as the majority conclude, it is difficult to imagine a more accurate way of testing ability to scale a six-foot wall than to scale one.

Nevertheless, while Congress clearly did not intend by title VII of the Civil Rights Act to bar all employment tests, title VII does forbid the use of employment tests that are discriminatory in effect unless the employer meets "the burden of showing that any given requirement [has] a manifest relationship to the employment in question." (*Griggs* v. *Duke Power Co., supra,* 401 U.S. at p. 432 [28 L.Ed.2d at p. 165].) This burden arises only after the complaining party has made out a prima facie case of discrimination, that is, has shown that the test in question selects applicants for hire in a racial or sexual pattern "significantly different from that of the pool of applicants." (*Albemarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 425 [45 L.Ed.2d 280, 301, 95 S.Ct. 2362]. See also Gov. Code, § 50084: "Each local agency's hiring practices ... shall conform to the Federal Civil Rights Act of 1964," and § 50085: "No local agency shall, as a part of its hiring practices ..., employ any ... testing or evaluation methods which are not job-related unless there is no adverse effect.")

In the present case, the majority admit that the six-foot wall test has such discriminatory impact, and thus correctly conclude that the Oakland Police Department has the burden of proving that the test is demonstrably related to the job. As I shall explain, however, under the relevant title VII precedents and the authoritative federal guidelines,[1] the Oakland Police Department has failed to meet its burden in a number of respects.

In the first place, while defendants do not require Oakland police officers to take the physical agility test or to be examined annually for physical fitness, defendants asked 41 police officers to take the present agility test as an experiment. Although several of the officers failed to scale the six-foot wall, defendants did not dismiss them.[2] Thus despite

---

[1]The Equal Employment Opportunity Commission has issued "Guidelines" for employers seeking to determine, through professional validation studies, whether their employment tests are job related. (29 C.F.R. § 1607.1 et seq.) The United States Supreme Court has held that the Guidelines "[express] the will of Congress" (*Griggs, supra,* 401 U.S. at p. 434 [28 L.Ed.2d at p. 166]), and has specifically approved the Guidelines' method for demonstrating job relatedness. (See *Albemarle Paper Co.* v. *Moody, supra,* 422 U.S. at pp. 430-431 [45 L.Ed.2d at pp. 303-304].)

[2]As defendants' test administrator testified, "two of the guys that failed the test had bad backs and had no business taking it, but they were just taking it to try and participate in the program. One guy had been shot a couple of times."

the fact that the six-foot wall test appears on its face to be job-related, the assumption that the tested skill is a *necessary prerequisite* to an adequate performance of the job collapses if defendants retain current employees in the work force despite their inability to pass the test. (See *Griggs* v. *Duke Power Co., supra*, 401 U.S. at pp. 431-432 [28 L.Ed.2d at pp. 164-165]; *United States* v. *City of Chicago* (7th Cir. 1977) 549 F.2d 415, 434; *Rogers* v. *International Paper Co.* (8th Cir. 1975) 510 F.2d 1340, 1351, as mod., 526 F.2d 722.)

Moreover, the record in the present case reveals that before instituting the current physical agility test, defendants required that an applicant for the position of policewoman meet certain height and weight standards and perform only a series of simple physical exercises, not including wall-scaling. Defendants required male applicants to meet certain height and weight standards and to perform a physical exercise examination which was relatively demanding, but which did not include wall-scaling. In *Hardy* v. *Stumpf* (1974) 37 Cal.App.3d 958 [112 Cal.Rptr. 739], the court invalidated the City of Oakland's height and weight requirements for police officers. Defendants consequently replaced the invalidated requirements and both physical exercise examinations with the present agility test, without requiring incumbent employees to pass the new test.

Under the Equal Employment Opportunity Commission Guidelines, however, "A test or other employee selection standard—even though validated against job performance in accordance with the guidelines in this part—cannot be imposed upon any individual or class protected by title VII where other employees, applicants or members have not been subjected to that standard." (29 C.F.R. § 1607.11.) As the court explained in *United States* v. *Jacksonville Terminal Company* (5th Cir. 1971) 451 F.2d 418, cert. den. (1972) 406 U.S. 906 [31 L.Ed.2d 815, 92 S.Ct. 1607], there can be "no rational justification" for exempting incumbent employees from the rigors of a new job standard without granting identical immunity to contemporary applicants. (See also *James* v. *Stockham Valves & Fittings Co.* (5th Cir. 1977) 559 F.2d 310, 337-338, fn. 43, cert. den. (Jan. 16, 1978) 434 U.S. 1034 [54 L.Ed.2d 781, 98 S.Ct. 767]; *Nance* v. *Union Carbide Corp., Consumer Prods. Div.* (4th Cir. 1976) 540 F.2d 718, 727-728, vacated on other grounds (1977) 431 U.S. 952 [53

L.Ed.2d 268, 97 S.Ct. 2671].) When a test has a discriminatorily exclusionary effect, as in the instant case, it clearly presents the potential for perpetuation of past discrimination if the requirement is not applied uniformly to both present employees and applicants.

In addition, the same federal Guideline specifies that "Those employees or applicants who have been denied equal treatment, because of prior discriminatory practices or policies, must at least be afforded the same opportunities as had existed for other employees or applicants during the period of discrimination. Thus, no new test or other employee selection standard can be imposed upon a class of individuals protected by title VII who, but for prior discrimination, would have been granted the opportunity to qualify under less stringent selection standards previously in force." (29 C.F.R. § 1607.11.)

As the majority acknowledge, this language stipulates that a female applicant for the position of Oakland police officer who, because of prior discrimination, was unable to qualify under previous less stringent standards, cannot now be required to take and pass a more stringent test. (See *Albemarle Paper Co.* v. *Moody, supra,* 422 U.S. 405, 434 [45 L.Ed.2d 280, 306]; *Officers for Justice* v. *Civil Serv. Com'n, San Fran.* (N.D. Cal. 1975) 395 F.Supp. 378, 384-385.) "This Guideline does not require that the affected class member show that he would have been *able* to qualify in the absence of discrimination; it requires only that he show that he lost the *opportunity* to qualify." (Original italics.) (*Watkins* v. *Scott Paper Co.* (5th Cir. 1976) 530 F.2d 1159, 1178, fn. 27, cert. den., 429 U.S. 861 [50 L.Ed.2d 139, 97 S.Ct. 163].) In the present case, however, defendants did not allow plaintiff to take either the simple exercise examination formerly required of female applicants, or the more strenuous exercise examination required of male applicants. Thus, by substituting the new six-foot wall test, a more restrictive selection procedure than that previously in force for women, and one which current male employees have never been required to pass, defendants have failed to afford "the same opportunities as had existed for other employees or applicants during the period of discrimination." Under this Guideline alone, then, defendants' six-foot wall test cannot stand.

Secondly, defendants' use of the six-foot wall test is additionally invalid since defendants fail to demonstrate that "wall-scaling" does not involve a skill which an employee could easily attain in a brief training period. The federal Guidelines specifically provide that "The types of

knowledge, skills or behaviors contemplated [as appropriate subjects for testing] *do not include those which can be acquired in a brief orientation to the job.*" (Italics added.) (29 C.F.R. § 1607.5 (a).) The rationale for this principle is clear: because of cultural and societal patterns, members of different sexes, races or ethnic groups may in many instances initially bring to a job differing skills in a number of areas. The Guidelines simply recognize that if such a skill can be acquired in a brief orientation to the job, the employer may not properly seize upon an applicant's initial unfamiliarity with the skill as a basis for a final rejection of an application for employment. Thus if an athletic maneuver can easily be learned through an employer's brief instruction, the employer under the applicable federal Guidelines may not rely on the applicant's inexperience with the technique as a ground for barring that person from all employment. (Cf. *Watkins* v. *Scott Paper Co., supra,* 530 F.2d at pp. 1180-1181.)

In the present case, defendants utterly failed to demonstrate that women could not easily be trained to scale six-foot walls; indeed, the evidence in the record supports just the contrary conclusion. Defendants' test administrator admitted that he had "demonstrated to a couple of women techniques which appeared to be beneficial to some women in getting over the wall. . . . It was like, if a woman took a test and failed it and she said, 'Gee whiz, what do you think I can do?' and I said, 'A lot of people seem to have success doing it this kind of way. . . .' " Thus the majority's conclusion is wrong: it is quite likely that defendants, with little effort, can teach female recruits how to scale six-foot walls once in uniform.

Thirdly, in addition to the fact that present police officers have not jeopardized their jobs by failing the six-foot wall test, and that defendants have not shown that wall-scaling is not an easily acquired skill, defendants' attempt to prove the validity of the wall test is materially defective as measured against the federal standards. The Guidelines emphasize that "Evidence of a test's validity should consist of empirical data demonstrating that the test is *predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job* or jobs for which candidates are being evaluated." (Italics added.) (29 C.F.R. § 1607.4(c).) As the court held in *Officers for Justice* v. *Civil S. Com'n, C. & C. San Francisco* (N.D. Cal. 1973) 371 F.Supp. 1328, 1339, " 'mere surmises by the defendants . . . cannot justify the use of employment qualifications which will have a discriminatory impact on minority groups.' [Citation.] Rather, defendants 'must come forward with

convincing facts establishing a fit between the qualification and the job.' [Citation.]"

Although the fact that the applicable zoning ordinance permits fences to a height of six feet may justify the use of a six-foot wall in the test,[3] defendants presented absolutely no evidence to establish that the *smooth plywood* wall utilized in the test was at all representative of walls and fences in the City of Oakland. When plaintiff asked defendants' test administrator "whether or not there is a substantial number of walls in the City of Oakland [made of smooth plywood]," the administrator replied, "I don't know. I doubt that many—never mind, strike that." Yet it is obvious that the test wall's composition considerably affects the difficulty of the scaling test. As a consequence, defendants' failure to justify the use of smooth plywood is significant.

Finally, the federal Guidelines expect "that each operational cutoff score [in an employment test] will be reasonable and consistent with normal expectations of proficiency within the work force . . . ." (29 C.F.R. § 1607.6.)(See *Officers for Justice* v. *Civil S. Com'n, C. & C. San Francisco, supra,* 371 F.Supp. 1328, 1338.) In defendants' six-foot wall test, applicants were required to scale the wall in at most two attempts as part of the two and one-half-minute physical agility test. Yet defendants offered *no evidence* that officers required to scale fences and walls in the course of performing their duties are forced to do so in a matter of seconds, without assistance, and in at most two attempts. As defendants' test administrator explained, "They get two times to try to get over the wall. If they don't get over the first time, they can back up a few steps and try to climb it again . . . , the theory being officers don't always get over the fences on the first try . . . , so we thought two times was reasonable." Under the applicable federal standards, such a subjective explanation fails to demonstrate that defendants' test accurately reflects the "normal expectations of proficiency" of the Oakland police.

While the ability to scale a six-foot wall may appear to be related to the effective performance of an Oakland police officer's duties, this

---

[3]Although a test wall of six feet may indeed reflect the average height of fences and walls in Oakland, defendants did not demonstrate this supposition in a statistically reliable way. As defendants' test administrator explained, "The officer should be able to scale at least what the maximum height barrier [is] in the city. . . . I would say probably the average [height of fences in Oakland], I don't know, [is] three and a half to six, seven feet. I can't give an average. . . . I haven't been around and measured every fence in the City of Oakland. . . . I looked at numerous fences. I drove through a variety of neighborhoods and I just looked at them."

simple conclusion does not, as the majority have suggested, end all inquiry under the federal Civil Rights Act. Because of the test's conceded discriminatory effect, defendants bear the burden of proving the test's validity in conformity with federal standards.

The defendants have failed to sustain that burden. As we have seen, although the employer utilized the test to screen out a disproportionate number of women, it never required all of its current employees to take the test, and it retained several present male employees despite the fact that they, like the present plaintiff, failed to scale the wall in two tries. Moreover, the record suggests that wall-scaling is a skill which may easily be acquired in a brief orientation and therefore is an inappropriate subject for a test which has adverse employment effect. Finally, the City of Oakland provided no statistically reliable data to support its use of a smooth six-foot plywood test wall. Under these circumstances, I believe that the majority clearly err in holding that defendants have adequately validated their test.

Accordingly, I would reverse the judgment of the trial court.

Appellant's petition for a rehearing was denied June 1, 1978. Bird, C. J., Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.