[Civ. No. 60704. Second Dist., Div. One. Apr. 30, 1981.]

GAIL KUBIK, Plaintiff and Appellant, v.
SCRIPPS COLLEGE et al., Defendants and Respondents.

COUNSEL

Ronald R. Talmo, Gill Deford, Neal S. Dudovitz, Fred Okrand and Richard W. Petherbridge for Plaintiff and Appellant.

O'Melveny & Myers, Robert A. Siegel and T. Warren Jackson for Defendants and Respondents.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Gail Kubik appeals from an order denying his request for a preliminary injunction by which plaintiff sought to restrain defendants Scripps College, the Board of Trustees of Scripps College and president John Chandler from terminating his employment at the end of the 1979-1980 academic year as a professor of music composition under a contract of unlimited tenure. Defendants had informed plaintiff by let-

ter on May 11, 1979, that the ensuing academic year would be the final year of his appointment in that he would reach the "normal retirement age" of 65 during the course of that year.

Plaintiff founded his request for a preliminary injunction on the premise that Labor Code section 1420.15, subdivision (a), which excepted employees of institutions of higher education who served under contracts of unlimited tenure from the general prohibition against mandatory retirement contained in Labor Code section 1420.1, denied him equal protection of the law as guaranteed by the California Constitution, article I, section 7. The trial court found sufficient state involvement by enactment of Labor Code section 1420.15 to constitute state action, but denied the injunction on the ground that the statute satisfied the rational basis standard of equal protection review.[1]

CONTENTS

I

Plaintiff contends that the trial court erred in applying the rational basis standard of review for the following reasons:

A. Plaintiff possesses a fundamental right to pursue his chosen profession which requires application of a strict scrutiny standard of equal protection review, and

B. Strict scrutiny is further required in that age is a suspect classification under the California Constitution.

II

Additionally, plaintiff avers that Government Code section 12942, subdivision (a) must fall when subjected to a strict scrutiny standard of review as unnecessary to the furtherance of a compelling state interest.

---

[1]Defendants originally cross-appealed to challenge the trial court's determination that there was sufficient state involvement to constitute state action for equal protection purposes. However, defendants indicate in their brief on appeal that they have chosen not to pursue the cross-appeal.

Labor Code sections 1420.1 and 1420.15 have been repealed (Stats. 1980, ch. 992) and reenacted as Government Code sections 12941 and 12942, which designations will be used hereinafter.

DISCUSSION

I

*Fundamental Right to Pursue Chosen Profession*

██ There is no merit to plaintiff's broad assertion that he possesses a fundamental right to pursue his chosen profession in the instant context. Notwithstanding the principle enunciated in *Truax* v. *Raich* (1915) 239 U.S. 33, 41 [60 L.Ed. 131, 135, 36 S.Ct. 7] that the right to work at a lawful occupation is an essential component of liberty, the United States Supreme Court consistently has refused to recognize a fundamental right to particular employment. (*Vance* v. *Bradley* (1979) 440 U.S. 93, 96-97 [59 L.Ed.2d 171, 175-176, 99 S.Ct. 939]; *Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307, 313 [49 L.Ed.2d 520, 524-525, 96 S.Ct. 2562].)[2] California courts have followed substantially the same reasoning, holding in *Townsend* v. *County of Los Angeles* (1975) 49 Cal.App.3d 263, 267 [122 Cal.Rptr. 500] that there is no fundamental right to work for a particular employer, public or private. (Accord *Schmier* v. *Board of Trustees* (1977) 74 Cal.App.3d 314, 318-319 [141 Cal.Rptr. 472], app. dism. 440 U.S. 941 [59 L.Ed.2d 630, 99 S.Ct 1415]; *American Federation of Teachers College Guild* v. *Board of Trustees* (1976) 63 Cal.App.3d 800 [134 Cal.Rptr. 111].)

Plaintiff nevertheless relies on *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351] and the limitation enunciated in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10] as establishing a fundamental right to engage in the "common occupations of the community." It is questionable whether *D'Amico* may be fairly construed as extending to plaintiff a right to be free from mandatory retirement by any college or university whatsoever. *D'Amico* acknowledged that the rational basis standard of review is traditionally applied to occupational regulation. (*Id.*, at p. 17.) The few exceptions invariably have involved a classification which is "suspect" in constitutional terms. (See, e.g., *In re Griffiths* (1973) 413 U.S. 717 [37 L.Ed.2d 910, 93 S.Ct. 2851], *Raf-*

---

[2]Both *Bradley* and *Murgia* involved public employment. However, the standard set forth therein is not rendered inapplicable by any asserted distinction between public and private employment. (See *Dandridge* v. *Williams* (1970) 397 U.S. 471 [25 L.Ed.2d 491, 90 S.Ct. 1153].)

*faelli* v. *Committee of Bar Examiners* (1972) 7 Cal.3d 288 [101 Cal.Rptr. 896, 496 P.2d 1264, 53 A.L.R.3d 1149], *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194] [national origin or alienage]; *Gay Law Student Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592] [sexual preference; touches upon fundamental privacy interest]; *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1 [gender].) Moreover, the California exceptions noted all have involved the creation of a general barrier to the pursuit of an occupation by a particular group. Hence there is no apparent conflict between *Townsend* v. *County of Los Angeles, supra,* 49 Cal.App.3d 263 and *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1.[3]

In any event, *D'Amico* drew a clear distinction between "common occupations" and "professions whose technical complexity and intimate relationship to the public interest and welfare counsel greater deference to the legislative judgment." (*Id.,* at p. 18.) Plaintiff would have *D'Amico* and its successor, *Hardy* v. *Stumpf* (1978) 21 Cal.3d 1 [145 Cal.Rptr. 176, 576 P.2d 1342], limited to the areas occupied by the professions at issue therein: health care [medical doctors] and public safety [police officers]. We are unwilling to limit the scope of *D'Amico* so narrowly and proceed to analyze plaintiff's profession by the *D'Amico* standard.

However an earlier period may have viewed teaching in general, the profession of educator at an institution of higher learning cannot now fairly be viewed as a "common occupation of the community." Hence we consider references in *Meyer* v. *Nebraska* (1923) 262 U.S. 390 [67 L.Ed. 1042, 43 S.Ct. 625, 29 A.L.R. 1446] to teaching as a common occupation inapposite. Without question, the profession of college or university educator involves technical complexity ranging from applied nuclear physics to Chaucerian literature. Moreover, the intimate relationship of education to public interest and welfare is not open to question in the wake of *Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929]. The fundamental nature of the right to receive an education, established in *Serrano,* denotes a most intimate

[3]We do not find *Kerrigan* v. *Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43 [154 Cal.Rptr. 29] persuasive authority to the contrary. *Kerrigan* was concerned solely with whether the right to work free from discrimination is both vested and sufficiently fundamental in nature to invoke the independent judgment test in an administrative mandamus proceeding. Fundamental rights in that context are not necessarily coextensive with fundamental constitutional interests.

link with public welfare. The state's interest in the protection of that right could not be greater. Therefore, it is appropriate with respect to plaintiff's profession that we accord "greater deference to the legislative judgment" than is necessary with more common occupations.

*Age as a Suspect Classification*

▆ Plaintiff contends that age is a suspect classification under the California Constitution, relying on the criteria applied in *Sail'er Inn, Inc.* v. *Kirby, supra*, 5 Cal.3d 1, 18-19 in establishing gender as a suspect classification. We disagree.

As *Sail'er Inn* noted, a suspect classification is one marked by an immutable characteristic grounded in the accident of birth and resulting in a stigma of inferiority and second class citizenship. (*Ibid.*) Plaintiff asserts that age, like gender, is an immutable characteristic resulting from an accident of birth. While the age of each of us at any particular time is the certain result of the date of our birth, the progression through the stages of life is simply a natural process to which every one of us is subject. As a result, no member of an age group labors under any disability not encountered by every other member of society at some point in time. In that regard, age cannot be equated with race, alienage, national origin or sex.

The aged, unlike women, aliens or blacks, have *not* labored under unique social and legal disabilities, experiencing a history of purposeful unequal treatment. The aged have not been disenfranchised, excluded from juries or public office, or denied equality in the area of property ownership. While the treatment of the aged in our society has not been entirely free of discrimination, particularly in the area of employment opportunity, old age does not define a "discrete and insular class" occupying a position of political powerlessness which "command[s] extraordinary protection from the majoritarian political process." (*Massachusetts Bd. of Retirement* v. *Murgia, supra*, 427 U.S. 307, 313 [49 L.Ed.2d 520, 525].) The legislative policy expressed in Labor Code section 1411 that "it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of . . . age" does not compel a different result. ▆ While expressions of public policy are valuable aids in construing the meaning of a statute, it is inappropriate to test the constitutionality of legislation by construing public policy except where the policy is constitutionally mandated. (*Schmier* v. *Board of*

*Trustees, supra*, 74 Cal.App.3d 314, 319.) ■ Accordingly, even if Government Code section 12942, subdivision (a) may be said to impose a penalty on a class defined as the aged, contrary to the policy expressed in Labor Code section 1411, the distinction drawn is not sufficiently akin to those classifications heretofore characterized as suspect to require strict scrutiny.

## II

As Government Code section 12942, subdivision (a) neither abridges the exercise of a fundamental right nor operates to the unique disadvantage of a suspect class, we need not address plaintiff's contention that the statute must fall when subjected to strict scrutiny. ■ Rather, our review is limited to a determination of whether the classification employed bears a rational relation to the purpose of the statute. (*Brown v. Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) The burden of demonstrating the irrationality of the statute rests on plaintiff and it will not be set aside if any basis reasonably may be conceived to justify it. (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d 1, 17.)

Government Code sections 12941 and 12942[4] parallel the federal Age Discrimination Act, 29 United States Code sections 621 through 634. Enacted five years after the inception of the federal plan, the California legislative scheme has been modeled on the federal act throughout its developing history. Amendments to the code have essentially paralleled amendments to the federal act. Although California's amendatory process has, on occasion, lagged behind the federal plan, the Legislature has exhibited a consistent effort to achieve uniformity. Hence the goals of the state and federal acts are presumptively the same.

---

[4]Government Code section 12941 provides in pertinent part: "(a) It is unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action. This section shall not be construed to make unlawful the rejection or termination of employment where the individual applicant or employee failed to meet bona fide requirements for the job or position sought or held, or to require any changes in any bona fide retirement or pension programs or existing collective-bargaining agreements during the life of the contract, or until January 1, 1980, whichever occurs first, nor shall this section preclude such physical and medical examinations of applicants and employees as an employer may make or have made to determine fitness for the job or position sought or held."

Government Code section 12942 provides in pertinent part: "Nothing in this section

Plaintiff suggests that the only legitimate state interest at issue is the removal of unfit professors. This approach too narrowly conceives the scope of the state's interest which may legitimately extend to the maintenance and promotion of faculty excellence. There are numerous ways unrelated to physical or mental fitness in which a mandatory retirement policy could rationally further that interest.

The Legislature reasonably could have concluded that permitting mandatory retirement would create opportunities for younger professors, women and minorities, stimulate academic performance by assuring predictable openings, guard against intellectual stagnation, promote fresh and innovative educational exploration, allow advance planning for staff needs, and avoid the difficulties inherent in evaluating the individual performances of aged professors. Indeed, the legislative history of the parallel federal provisions supports the importance of many of the enumerated rationales. (Sen. Rep. No. 95-493, 95th Cong., 2d Sess. 8-9 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News, pp. 504, 511-512.)

Plaintiff submits that the proviso in Government Code section 12942, subdivision (a), effective July 1, 1982, which thereafter affects only professors who have attained the age of 70 demonstrates the irrationality of the statute. We note that the legislative process necessarily involves a balancing of interests. The Legislature reasonably could have concluded that the problems were most pressing in the immediate future, thereby requiring a more drastic accommodation between competing interests than would be necessary at a later date. We perceive no irrationality in such a legislative decision.

In light of the legitimate state interest in academic excellence and intellectual diversity, coupled with the likelihood that mandatory retirement will aid in promoting those values, the Legislature's determination that different treatment is warranted for a class of tenured college professors is rationally based. (See *Hardy* v. *Stumpf, supra,* 21 Cal.3d 1, 8.) In thus upholding the validity of Government Code section

---

or Section 1420.1 shall be construed to prohibit compulsory retirement of the following:

"(a) Prior to July 1, 1982, of any employee who has attained 65 years of age and is serving under a contract of unlimited tenure, or similar arrangement providing for unlimited tenure at an institution of higher education as defined by Section 1201(a) of the Federal Higher Education Act of 1965.

"On and after July 1, 1982, this subdivision shall only apply to an employee who has attained 70 years of age."

12942, subdivision (a), we intend no indorsement of mandatory retirement as social policy. We are not unmindful of the potential for harm both to the individual and to society in the form of lost human resources which may result from mandatory retirement. However, it is the peculiar forte of the legislative process to undertake the resolution of competing social goals and we will not second-guess rational attempts to do so.[5]

The order is affirmed.

Lillie, J., and Johnson, J.,* concurred.

A petition for a rehearing was denied May 19, 1981, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1981.

---

[5]As we conclude that Government Code section 12942, subdivision (a) does not deny plaintiff equal protection of the law, we need not address the issue of whether enactment of the statute demonstrates sufficient state involvement to constitute state action for equal protection purposes.

*Assigned by the Chairperson of the Judicial Council.